ST. PAUL, MINNEAPOLIS & MANITOBA RAILWAY COMPANY v.
DANIEL B. ECKEL and Others.[1]

January 18, 1901.

Nos. 12,444—(235).

**Doctrine of Laches—Stale Demand.**

The doctrine of laches, when applied to refusals of the courts to enforce stale demands, is governed in a great measure by the peculiar circumstances surrounding each case, by the nature of the claim, and whether the delay has been unnecessary and unreasonable. The doctrine is based upon grounds of public policy, which, for the peace of society, demand the discouragement of stale claims.

**Ejectment—Substitution of Heirs of Defendant.**

*Held,* on the undisputed facts appearing in this case,—an action of ejectment brought in 1891,—that the claim of plaintiff must be deemed stale, and that its laches and that of the original plaintiff are sufficient to warrant the court below in making its order refusing to revive the action as against the heirs at law of the original defendant, now deceased, and to substitute such heirs as defendants.

Action of ejectment by Edward Sawyer, as special commissioner, against Daniel B. Eckel. An order was made substituting St. Paul, Minneapolis & Manitoba Railway Company as plaintiff and requiring the heirs at law of defendant, who had died, to show cause why they should not be substituted as parties defendant, and why the action should not be revived against them. From an order, Searle, J., denying the motion for substitution of defendants and revival of the action, the substituted plaintiff appealed. Affirmed.

*S. L. Campbell,* for appellant.

*E. B. Wood,* for respondents.

[1] Reported in 84 N. W. 1008.

COLLINS, J.

This was an action in ejectment. In addition to the usual allegations in the complaint, it was alleged that in 1875 the United States patented the land in question to the state; that February 22, 1877, the latter conveyed it to the St. Paul & Pacific Railway Company; and that the present substituted plaintiff, a corporation, had succeeded to all the rights and title of said railway company. It was also alleged that the land was within the territorial limits of the grant to the Northern Pacific Railway Company, as fixed by the act of July 2, 1864, and was also within the territorial limits of the congressional grant of lands to said St. Paul & Pacific Railway Company; that both companies claimed title thereto, and that an action had been commenced and was then pending in the circuit court of the United States for the purpose of determining the title as between said companies; that in the year 1879 the plaintiff Edward Sawyer was duly appointed a special commissioner to have the care, control, and custody of the land during the litigation, with full power and authority to take possession thereof. It was by virtue of this appointment that Sawyer instituted this action, and his legal right to do so cannot well be questioned.

The answer put some of the allegations of the complaint in issue, admitted the representative character of the plaintiff as alleged, and expressly averred that defendant was the owner of the lands under and by virtue of the homestead laws of the United States; his rights having commenced by entry on October 15, 1876, and were completed on October 6, 1888, when the United States duly conveyed to him, by its patent, the entire tract. On the same day, it was alleged, the state of Minnesota, by the governor thereof, and for defendant's benefit, duly relinquished to the United States all its right, title, and interest in and to said land. It also appears from the answer that prior to the beginning of the action the defendant, in good faith, had paid taxes and made improvements on the land amounting in value to the sum of $1,467.

The pleadings in this action seem to have been completed April 2, 1891. No further steps were taken until the making of an affidavit by the plaintiff Mr. Sawyer, as hereinafter stated. January

19, 1894, Eckel, the defendant, died. Proceedings were duly had in the proper probate court, the estate of the deceased was duly settled, and the land decreed to his heirs at law on December 19, 1896. October 23, 1899, Mr. Sawyer made an affidavit setting forth the commencement of this action, and the pendency of the action in the circuit court of the United States, mentioned in his complaint; that it had been decided and a final decree entered on March 6, 1898, by which title to the land involved was adjudged to be in the St. Paul, Minneapolis & Manitoba Railway Company as successor of the original grantee; and that the deponent was then discharged as such special commissioner. It further set forth that the defendant had died, the names of the heirs at law, and that they were in adverse and hostile possession of the land. This affidavit was made in support of a motion to substitute the St. Paul, Minneapolis & Manitoba Railway Company as plaintiff in place of the deponent, and also to have said action continued and revived against the heirs at law of the above-named defendant, deceased.

A supplemental complaint, conforming to the affidavit, was also submitted; and thereupon the court, ex parte, substituted the company as plaintiff in place of Edward Sawyer, and then ordered that the heirs at law show cause why they should not be substituted as defendants. At the hearing the motion embraced in the order was opposed upon the ground that there had been a lack of due diligence, and that Mr. Sawyer, as well as the substituted plaintiff, had been guilty of gross laches and negligence in prosecuting the action as originally brought, and in moving for new defendants. The order to show cause was discharged, and the motion therein involved denied. Plaintiff appeals from the order.

G. S. 1894, § 5171, provides that in case of the death of a party to an action the court, on motion, may allow it to be continued by or against his representative or successor in interest, and the order to show cause was in furtherance of this section. Defendant urges that the order was discretionary, and for that reason cannot be reviewed, there being no abuse of discretion in its denial; 12 Enc. Pl. & Pr. 839, and cases cited, being referred to. We need not determine whether this order was or was not discretion-

ary, and for that reason not reviewable except for abuse of discretion; for it is very evident that the plaintiff Sawyer has been guilty of the grossest laches and neglect since he instituted the action.

The deceased defendant had been in peaceable possession of the land for nearly fifteen years when this action was brought, in 1891. He had made valuable improvements, and for a number of years had paid taxes, all in good faith, first as an entryman under the homestead laws of the United States, and then as the patentee named in the highest form of documentary evidence of title,—a patent from the government. He was a pioneer in a new and sparsely-settled portion of our state, and as the years went by he saw the country improve and his land increase in value. He died with this lawsuit apparently abandoned. His heirs at law caused his estate to be settled, and have succeeded to his title, in the belief, probably, that they were obtaining something of value. At least, there is nothing to show that they had any reason to suppose that they were inheriting a lawsuit instead of a farm. There was no reason why the action should not have been brought to a prompt and speedy determination. It was immaterial that the title to the land was in dispute between the two railway companies; for the original plaintiff represented both, and the fact that there was this litigation would in no manner affect or interfere with his right to prosecute the action, and to have the courts decide, as between the plaintiff and himself, who was entitled to possession. In fact, this was his duty as special commissioner. The delay was quite as prejudicial to the interests of the corporations he represented as it was to the defendant. But no steps were taken until November, 1899, and then the affidavit was made to which we have referred. This was eighteen months after the final decree in the action in which the plaintiff had been appointed special commissioner. It was eight years after this action was commenced. It was three years after the death of defendant, and more than one year after the settlement of his estate.

The doctrine of laches, when applicable to refusals of the courts to enforce stale demands, is not dependent upon the statutory limitation, but is governed in a great measure by the peculiar

circumstances surrounding each case, by the nature of the claim, and whether the delay has been unnecessary and unreasonable. Taylor v. Whitney, 56 Minn. 386, 57 N. W. 937. As was said in Mackall v. Casilear, 137 U. S. 556, 11 Sup. Ct. 178, the doctrine of laches is based upon grounds of public policy, which, for the peace of society, demand the discouragement of stale claims. We can scarcely conceive of a case in which greater neglect and laches could be shown than in the one at bar, and, as stated by the court below, the spirit of our laws and public policy requires reasonable diligence in bringing litigation to a close, and will not permit parties by their negligence and delay to drag suits unreasonably, until parties die and evidence is destroyed; nor will it permit parties in any form of practice under the law to avoid its spirit and evident intent by unreasonably and negligently delaying a trial. It was not incumbent upon the original defendant, or upon those who succeeded him, to seek out his adversary, the representative of two large and powerful corporations, and by a notice of trial compel the determination of a lawsuit involving their right to remain in possession. To disregard and overlook the delay, whether intended or not, would surely work the grossest hardship to the heirs of defendant. It is further to be observed that the original plaintiff's failure to bring the case to trial, and the delay of the substituted plaintiff to institute the present proceedings within a reasonable time after the decease of Mr. Eckel, are wholly unexplained and unexcused. The plaintiff has forfeited all right to the relief which it now seeks.

Order affirmed.