CITY OF MULLENS *v.* UNION POWER COMPANY, *a corporation,*

*and*

CITY OF MULLENS *v.* MULLENS WATER WORKS, *a corporation.*

(CC 623, 624)

Submitted January 30, 1940. Decided March 19, 1940.

*Kingdon & Kingdon* and *R. D. Bailey,* for plaintiff.

*Lively & Lively, Arthur B. Hodges, A. Bliss McCrum* and *Vinson, Thompson, Meek & Scherr,* for respondent Union Power Co.

*Lively & Lively, Arthur B. Hodges* and *A. Bliss Mc-Crum,* for respondent Mullens Water Works.

MAXWELL, JUDGE:

Can a city, by eminent domain, without specific statutory authority, take over a privately owned public utility?

The circuit court answered in the affirmative by holding sufficient on demurrer two condemnation petitions, and certified its rulings to this Court for review.

Under one petition, the City of Mullens seeks to condemn and appropriate the properties of Union Power Co., a private corporation, which is furnishing within the City of Mullens electric current for power, heat and light. Under the other petition, the city would, by condemnation, acquire ownership and control of the properties of Mullens Water Works, likewise a privately owned utility corporation, now engaged in furnishing water to the city and its inhabitants.

The petitions are alike save only the names of the companies and the description of the service rendered. The legal propositions are the same in each case, except as to a certain statutory provision, hereinafter noted, applicable solely to the taking over of water distribution companies by municipalities.

In each petition, the city alleges that in April, 1939, acting under the home-rule-for-municipalities constitutional amendment of 1936 (West Virginia Constitution, Article VI, section 39a) and the municipal home rule statute enacted in 1937 (Code, Chapter 8A), the city amended its charter to authorize acquisition and ownership by the municipality of electric power and water utilities for the service of the city and its residents; that in pursuance of its newly acquired authority, the petitioner desires to take over the properties of both of the defendants and to oper-

ate the same as its enterprises; that the defendants have refused to place prices on their respective plants, and consequently the petitioner is unable to agree with either defendant as to a consideration to be paid. In each case, the petitioner prays that commissioners be appointed to ascertain and determine what will be just compensation for the properties and assets sought to be taken.

The charter amendment authorizes, "Subject to general law", the City of Mullens to acquire or establish, improve, operate, maintain and repair within the city public utility systems for the distribution of water, light, heat and power for the benefit of the people of the city.

The new section of the charter follows closely in phraseology a section of the municipal home rule statute, which reads: "Subject to general law a city shall have power to acquire or establish, improve, operate, maintain and repair, within or without the city, water systems and electric and gas systems for the production and distribution of light, heat and power primarily for the benefit of the city and consumers therein. A city may acquire watersheds, water and riparian rights, plant sites, rights-of-way and any and all other property and appurtenances necessary or appropriate for such a system. The products and services of any such utility may be sold to consumers outside the city limits to the extent, in the judgment of the governing body, that they are not required to satisfy the needs of consumers within the city.

"A city may purchase the franchises and properties of a privately owned public utility which the city would have the authority to acquire and construct as an original undertaking." Code, 8A-4-26.

This section of the statute does not expressly authorize municipalities to enter into ownership of the properties of utilities through the exercise of the power of eminent domain. Nor does the implication arise from the legislative authorization to acquire, establish and maintain water, electric, and gas systems, that there was legislative intendment that municipalities should have the right under the high power of eminent domain to acquire the properties

of operating companies engaged in serving the public. On appraisement of the entire statutory section immediately under consideration, there seems clear the legislative purpose, first, to authorize the establishment of utility systems through the process of construction, and second, to permit the purchase of franchises and properties of going utility concerns.

Though the home rule statute carries a requirement for liberal construction of its terms (Code, 8A-4-2), that provision, though manifesting a wholesome purpose, must not be considered as abrogating settled and basic principles of the law of condemnation of private property for public use. Eminent domain is an attribute of sovereignty which can be employed by an instrumentality of government, such as a municipality, only when the legislature of the state has unequivocally vested such governmental subdivision with the authority sought to be exercised. "The exercise of the power (eminent domain) being against common right, it cannot be implied or inferred from vague or doubtful language, but must be given in express terms or by necessary implication. When the right to exercise the power can only be made out by argument and inference, it does not exist." 1 Lewis on Eminent Domain (3d Ed.), section 371. Statutes pertaining to eminent domain must be strictly construed. *Adams* v. *City of Clarksburg,* 23 W. Va. 203; *Cemetery Association* v. *Redd,* 33 W. Va. 262, 10 S. E. 405; *Charleston & S. Bridge Co.* v. *Comstock,* 36 W. Va. 263, 15 S. E. 69. Concededly, municipalities are clothed with the power of eminent domain for specified purposes. Code, 54-1-1, 2; Code, 8-4-12. But nowhere in the statutes is a municipality or other corporate body politic authorized by statute, expressly or by necessary implication, to exercise the power of eminent domain for the acquisition of the property and assets of an operating utility as such, except only as herein next mentioned.

By legislative enactment of 1933, amended in 1937, municipalities are vested with the power of eminent domain for the purpose of acquiring privately owned water works systems. Code, 8-12-9. But that statute provides that such

power shall not be exercised without the prior approval of the Public Service Commission of the state. In the pending petition affecting the properties of the Mullens Water Works there is no allegation that the city has obtained the Public Service Commission's approval of the city's proposal. The city asserts that there now exists no necessity for the obtaining of such consent, because, it is alleged by the city, the requirement of the 1933 act has been impliedly repealed by the municipal home rule statute of 1937. The rationale of this position is that under the constitutional amendment and the enabling statute, municipalities are clothed with the right of self-determination, and it would be incongruous with that underlying principle to require a municipality to obtain the permission and approval of the Public Service Commission before the city could take over a water distributing system—a matter of purely municipal moment. To this contention of the city, we are unable to subscribe. It is the policy of the law of this state that all public utilities, whether publicly or privately owned, shall be subject to the supervision of the Public Service Commission. Code, Chapter 24, Articles 2 and 3. Such supervision pertains not only to utility rates and to matters of fair dealing with the public, but as well to the purchase and sale of utilities. It would be subversive and destructive of this entire system if a municipality, simply because operating under the new home rule plan, could acquire a utility without regard to the established policy of the state. It must not be forgotten that the very statutory provision on which the petitioner herein seeks mainly to ground its position, namely, Code, 8A-4-26, expressly provides that the undertakings by a municipality shall be in accord with general law.

In recapitulation: There is nothing in the municipal home rule statute or elsewhere which authorizes the pending petition against the electric power company. As to the water utility, there is likewise no provision in the home rule statute which gives legal sanction to the city's proposal to take over that property. Any effort pertaining to

municipal acquisition of the latter utility would have to be made in conformity with Code, 8-12-9.

These considerations require that the action of the circuit court in overruling the demurrers to the petitions be reversed, and that orders be entered here sustaining the demurrers. The petition against the Union Power Company will be dismissed without qualification. The petition affecting the water company will be dismissed without prejudice to any proper proceeding whereof the city may be advised.

*Reversed and rendered.*