**COUNTY COURT OF WAYNE COUNTY, W. VA., v. LOUISA & FORT GAY BRIDGE CO., Inc.**

No. 197.

District Court, S. D. West Virginia.

Aug. 22, 1942.

2

J. T. Lambert, Pros. Atty., and J. Floyd Harrison, Asst. Pros. Atty., and M. J. Ferguson, all of Wayne, W. Va., for plaintiff.

S. S. Willis, of Ashland, Ky., and Samuel Biern, of Huntington, W. Va., for defendant.

HARRY E. WATKINS, District Judge.

The pertinent question for consideration in this case is whether the State of West Virginia may condemn a toll bridge for public purposes, located partly in West Virginia and partly in Kentucky, in the absence of any permission or agreement with the State of Kentucky or the owner of such bridge, and in the absence of any special authorization of Congress. The question arises upon a motion to dismiss plaintiff's petition for condemnation, made by defendant, Louisa & Fort Gay Bridge Company, Incorporated, a Kentucky corporation, the owner of such bridge, after defendant had removed the case from the Circuit Court of Wayne County, West Virginia by reason of diversity of citizenship.

The toll bridge extends from Fort Gay, in Wayne County, West Virginia, across the Tug Fork of Big Sandy River to a point of land in Kentucky, and thence across the Louisa Fork of Big Sandy River to Madison Street, in Louisa, Kentucky. The length of the bridge is about 1,120 feet, of which less than 200 feet is in West Virginia. The boundary line between Kentucky and West Virginia is the middle of Tug Fork of Big Sandy River.

Plaintiff claims that it is authorized by the State of West Virginia to condemn the whole of this bridge by virtue of Chapter 27 of the Acts of West Virginia, Second Extraordinary Session, 1933, W.Va.Code, Ch. 17, Art. 17, §§ 30–32. It claims that under the doctrine of comity between the several states, that it may exercise the right of eminent domain upon property located in Kentucky, provided no law of Kentucky forbids such condemnation, and provided it is ready and willing to pay to the owners of that private bridge the just compensation for the property taken. I see no merit in either of these contentions.

The power of eminent domain is an attribute of sovereignty. Within its own jurisdiction each state possesses such sovereign power. But no state can take or authorize the taking of property located in another state. Each state holds all the property within its territorial limits free from the eminent domain of all other states. To argue that the people of West Virginia have any inherent right to take property located in Kentucky from a citizen of that state, is to assert that the sovereignty of West Virginia extends to some extent over the soil of Kentucky. "To state the proposition is to refute it." McCarter v. Hudson County Water Co., 70 N.J.Eq. 695, 65 A. 489, 498, 14 L.R.A.,N.S., 207, 118 Am.St. Rep. 754, 10 Ann.Cas. 116; 18 Am.Jur. 645; 29 C.J.S., Eminent Domain, § 19, p. 805; Grover Irrigation & Land Co. v. Lovella Ditch, etc., Co., 21 Wyo. 204, 131 P. 43, L.R.A.1916C, 1275, Ann.Cas.1915D, 1207. A state cannot own or acquire property in another state without its consent. Dodge v. Briggs, C.C., 27 F. 160; State of Georgia v. City of Chattanooga, 264 U.S. 472, 44 S.Ct. 369, 68 L.Ed. 796; Klein v. City of Louisville, 224 Ky. 624; 6 S. W.2d 1104, 1108. Adjoining states may agree as to the construction of bridges over navigable streams forming a boundary between them, or may refuse such consent. Covington & Cincinnati Bridge Co. v. Kentucky, 154 U.S. 204, 14 S.Ct. 1087, 38 L.Ed. 962.

The United States, being a sovereign, also enjoys the right of eminent domain. Under the commerce clause of the Federal Constitution, Article 1, § 8, the United States might condemn the bridge in question, or may delegate such right to West Virginia and Kentucky, or to either of them. For example, the Congress by an act approved July 17, 1942, has authorized the states of Minnesota and Wisconsin, jointly or separately, to condemn bridges now crossing the St. Croix River, at or near Hudson, Wisconsin, with the proviso that such bridges shall thereafter be maintained by such state or states free of tolls in accordance with the provisions of the act approved March 23, 1906, regulating bridges over navigable waters. No such authority has been given by Congress for the condemnation of the Louisa and Fort Gay bridge, and neither the State of Kentucky nor the owner of the bridge has consented thereto. Comity between these adjoining states cannot supply that high and drastic power of condemnation. Comity is a courtesy which one state extends to another by enforcing the laws of such other state when it is proper to do so, and such law is not contrary to the public policy of the state. Comity will not be exercised, when to do so, the state would be violating its own laws, or inflicting injuries on some one or more of its citizens.

Has the West Virginia Legislature attempted to give plaintiff the right to condemn such part of this bridge as is located in Kentucky? A careful reading of the statute convinces me that it has not attempted to do so, and that the statute is not inconsistent with the principles stated above. The title or preamble of the act (West Virginia Code, Chapter 17, Article 17, Sections 30–32) describes it as "An Act to provide for the construction, maintenance, establishment and operation * * * of highway toll bridges * * *", and also for the purchase or leasing of such bridges. Section 2, relied upon by the plaintiff, provides as follows:

"Any city or county so situated with reference to any river or stream, over and across which there is now a highway bridge, owned and operated by any bridge company or corporation, and situated partly within such city or county, is authorized and empowered to purchase such bridge, with funds obtained in the manner and from the source or sources mentioned by section one of this act, and to own and oper-

ate the same, as a self-liquidating enterprise or project; and also to obtain the possession, control and operation of such bridge, under and by a lease or other contract, with the owner or owners thereof, upon such terms and conditions, and for such period of time, as may be agreed upon by such city or county court, and the owner or owners of such bridge."

This section is limited to the voluntary purchase or lease of existing bridges. The courts have held that this power to purchase does not include the power to condemn. City of Mullens v. Union Power Company, 122 W.Va. 179, 7 S.E.2d 870, 871.

Section 3 of the act provides, in part, as follows:

"Any city or county court authorized and empowered by this act to construct or purchase and maintain and operate such highway toll bridge, is further authorized and empowered to do and perform any and all acts and make all contracts necessary to effectuate the general purposes of this act, including the acquisition, by original grant, purchase, condemnation or other lawful means, of all necessary permits, franchises, licenses, rights-of-way, easements and other rights in real estate, and title to and possession thereof, and/or to make such purchase, with the money borrowed as provided in section one of this act, or otherwise."

It would seem that this third section has application only when a bridge has been constructed under the first section of the act, or acquired by contract of purchase, or lease under the second section of the act, and is intended to provide for the complete and convenient operation of the bridge so constructed or purchased. The authority given to condemn relates only to condemnation of such property as is located within the state of West Virginia. The West Virginia statute must be read in the light of the general law that the jurisdiction of a state is co-extensive with its territory, and its legislative and judicial authority is bounded by the same limitation. For this reason general authority given to a corporation to take land by eminent domain is limited to the territory of the state granting such condemnation rights. 18 Am. Jur. 646. Two well settled rules of construction are involved. First, the power of eminent domain is against common right and cannot be implied or inferred from vague or ambiguous language. City of

4

Mullens v. Union Power Company, supra. Secondly, where an act is susceptible of two constructions, one of which will render the act valid and the other invalid, that construction must be adopted which will render the act valid. Anniston Mfg. Co. v. Davis, 301 U.S. 337, 57 S.Ct. 816, 81 L.Ed. 1143.

The cases relied upon by the plaintiff are not in point. In the case of Miller et al. v. Huntington & Ohio Bridge Co., 1941, W.Va., 15 S.E.2d 687, the court held that the County Court of Cabell County, West Virginia, had a right to purchase a toll bridge across the Ohio River between West Virginia and Kentucky, without first having obtained the consent of the State Road Commission or the Public Service Commission of West Virginia. The case of Louisville and Nashville Railroad Company v. Western Union Telegraph Company, 250 U.S. 363, 39 S.Ct. 513, 63 L.Ed. 1032, cited by plaintiff, was a proceeding seeking to hold void state judgments of condemnation by eminent domain giving a telegraph company the right to erect its poles along the railroad's right of way across the state of Mississippi. There the condemnation proceeding was under authority of an act of Congress, and the court held that Congress having granted to any telegraph company the right to construct and maintain its lines along the post roads of the United States and to·cross navigable streams that condemnation proceedings pursuant to such a grant, as to·interstate roads or bridges over navigable waters across the state of Mississippi, was not an interference with interstate commerce. Dickey v. Maysville, W. P. & L. Turnpike Road Co., 7 Dana 113, 37 Ky. 113, holds that the operator of a toll road may require the payment of tolls by a United States mail carrier. It was held that the United States had the right to use such toll road but was required to· pay for such use.

The motion of the defendant to dismiss the action is sustained, first, because the petition fails to state a claim upon which the relief prayed for can be granted, and secondly, because there is lack of jurisdiction over the subject matter. The petition shows upon its face that the plaintiff seeks to acquire by eminent domain property outside· the territorial limits of the State of West Virginia. An order may be entered in accordance with the views herein expressed.