STATE, BY HARRY H. PETERSON, ATTORNEY GENERAL, v. JOHN W. BENTLEY AND OTHERS.
MINNESOTA MUTUAL LIFE INSURANCE COMPANY, BIG STONE CANNING COMPANY, WENDELL MEDBERY, AND OTHERS, INTERVENERS.
STATE EX REL. J. A. A. BURNQUIST v. DISTRICT COURT OF BIG STONE COUNTY AND OTHERS.[1]

Nos. 33,446, 33,499, 33,522, 33,523.

December 10, 1943.

[1]Reported in 12 N. W. (2d) 347.

148

*J. A. A. Burnquist,* Attorney General, *Chester S. Wilson,* Deputy Attorney General, and *Sam W. Campbell,* Special Assistant Attorney General, for the State.

*Carl J. Eastvold, Victor E. Anderson, E. V. Cliff, E. C. Kraus,* and *George T. Havel,* for respondents.

HENRY M. GALLAGHER, CHIEF JUSTICE.

In June 1935, the state, by its attorney general, initiated proceedings in the district court of Big Stone county for the condemnation of certain lands in that county proposed to be taken in connection with the construction of a work relief project known as "F. A. 1—Big Stone-Whetstone Project." The proceedings were instituted pursuant to Mason St. 1927, c. 41, as amended, and L. 1935, c. 51, under the authority and direction of the state executive council. An order granting the state's · petition and appointing appraisers to ascertain and report the amount of damages to the several owners by reason of the taking was filed September 18, 1935. Work on the project was commenced in the fall of 1935 and completed in the spring of 1937, but a certificate of completion, with approval thereof, has not been filed as required by Minn. St. 1941, § 117.20 (4), (Mason St. 1927, § 6557-1[d]). All the lands condemned by the state are located at the southerly end of Big Stone Lake. The lake extends about 25 miles to the north and west of the lands so taken and forms the border between Minnesota and South Dakota at that place.

The controversies here involved have to do with tracts of land not included in the original petition. One of these tracts consists of 1,251 acres located at the head and northerly end of Big Stone Lake and is owned jointly by the Minnesota Mutual Life Insurance Company and Medbery Brothers. It is referred to in the briefs and will hereinafter be referred to as the Medbery land. About one-half of this tract is located in Minnesota and one-half in South Dakota. The other tract consists of 335 acres and is owned by the Big Stone Canning Company. It is located about two miles south of

the outlet and the southerly end of the lake in Big Stone county, this state.

In January 1938, the owners of the Medbery lands served on the attorney general a petition in intervention by which they sought to bring their Minnesota land into the condemnation proceedings. They alleged in their petition that in the construction and maintenance of the project and because of the diversion of waters from the Whetstone River into the reservoir of Big Stone Lake and the impounding of such waters in the lake their lands were flooded and their crops destroyed to such an extent as to constitute a taking of such lands. By stipulation of the parties the hearing on the petition was indefinitely continued. The stipulation, which was approved by the court, provided that the matter might be brought on for hearing "at any time upon 10 days' written notice by either party." It was brought on for hearing by petitioners on August 29, 1942, at which time they amended their petition to include damages for the years 1937 to 1942, inclusive.

At this hearing the state appeared specially and moved the court to deny jurisdiction to the petitioners. This motion was "overruled," and on October 7, 1942, an order was filed granting petitioners' application to bring their lands into the proceedings and appointing appraisers to ascertain and report the damages thereto. A subsequent motion by the state to vacate this order was denied on October 30, 1942. The commissioners found the damages to petitioners' Minnesota lands to be $22,240, and the state appealed from the award to the district court of Big Stone county. It also appealed to this court (Case No. 33499) from the order of October 7 bringing petitioners' lands into the proceedings and from the order of October 30 refusing to vacate that order.

On January 23, 1943, the state again moved that the order of October 7, 1942, be vacated and that it be granted permission to file a proposed answer, which motions were denied by the trial court on the ground that, the state having appealed from the order it sought by this motion to vacate, the court was without jurisdic-

tion to entertain the motion. The appeal in Case No. 33523 is from the order denying that motion.

On August 17, 1942, the owners of the Medbery lands served on the attorney general a petition to bring their South Dakota land into the proceedings. This petition was noticed for hearing and heard on August 29, 1942, at which time the state appeared specially and objected to the jurisdiction of the court. The objection was overruled, and on October 7, 1942, an order was filed granting the petition and appointing appraisers to ascertain and assess the damages. A motion by the state to vacate this order was denied on October 30, 1942.

A writ of prohibition issued out of this court on the state's petition on November 14, 1942, restraining further proceedings in the district court until the further order of this court. This case, No. 33466, is here on the petition, writ, and return thereto.

A petition in intervention by the Big Stone Canning Company to bring its land into the proceedings was served on the attorney general and noticed for hearing on October 12, 1942. The state appeared specially and objected to the jurisdiction of the court. It also demurred to the petition upon the grounds:

"1. That the court has not jurisdiction of the person of the State of Minnesota;

"2. That the court has not jurisdiction of the subject matter of the action in respect of said petition in intervention;

"3. That the facts stated in said petition in intervention do not constitute a cause of action."

The court overruled the demurrer, with a certificate that the questions presented were "important and doubtful." This appeal (Case No. 33522) is from that order.

The four cases were consolidated for hearing in this court.

The determinative questions presented by the various appeals are: Did the district court have jurisdiction to entertain the respective petitions in intervention; and, if so, did the petitions state facts which warranted the court in ordering into the proceedings

152

the lands described therein, to the end that such lands might be condemned and damages awarded to the owners thereof. These questions clearly appear in Case No. 33499, involving the Medbery Minnesota land, and will be discussed in connection with the appeal in that case. What is there said will apply to the other appeals insofar as applicable. The other points raised in Cases Nos. 33446, 33522, and 33523 will be treated separately.

## CASE No. 33499

■ "Jurisdiction is authority to hear and determine a cause." 2 Dunnell, Dig. & Supp. § 2345, and cases cited. It depends upon the right of the court to hear the matter in controversy and declare the law. State ex rel. Kinsella v. Eberhart, 116 Minn. 313, 133 N. W. 857, 39 L.R.A.(N.S.) 788, Ann. Cas. 1913B, 785; State ex rel. Decker v. Montague, 195 Minn. 278, 262 N. W. 684. The jurisdiction of a court or tribunal in condemnation proceedings depends wholly upon the statute authorizing it; and only after it has decided preliminary jurisdictional questions in its favor may the court exercise jurisdiction. County of Otter Tail v. Nelson, 187 Minn. 277, 245 N. W. 427; Geo. D. Harter Bank v. Muskingum W. C. Dist. 53 Ohio App. 325, 4 N. E. (2d) 996; Comesky v. Village of Suffern, 179 N. Y. 393, 72 N. E. 320; 29 C. J. S., Eminent Domain, p. 1193, § 232. However, once the jurisdiction in condemnation proceedings attaches, it is retained until a termination of the proceedings. State, by Benson, v. Stanley, 188 Minn. 390, 247 N. W. 509; State, by Peterson, v. Werder, 200 Minn. 148, 273 N. W. 714; City of St. Louis v. Weber, 140 Mo. 515, 41 S. W. 965.

No final certificate having been filed as required by Minn. St. 1941, § 117.20(4), (Mason St. 1927, § 6557-1[d]), the court had jurisdiction of the condemnation proceedings when the petition in intervention was presented, and still has. Had a certificate been filed prior to the presentation of the petition, a different situation would have existed. State, by Youngquist, v. Hall, 195 Minn. 79, 261 N. W. 874.

■ It is the contention of the state that in the exercise of the right of eminent domain the affirmative determination of what lands are necessary for any given purpose is purely a legislative question to be exercised by the agency designated by the legislature free from judicial interference, except where it appears that there has been a clear abuse of discretion in the taking, an element not involved in the instant proceedings. There is no argument with the rule that it is within the legislative discretion to determine what property shall be taken for public use. Nor is any effort made here to circumvent that rule. The court is not attempting to decide the need or propriety of taking land, or the extent to which it may be taken. But when, as appears here, the legislature has lawfully delegated authority to an agency to determine what lands are to be taken for a given project, and when that agency has exercised the authority so delegated in such a manner as to result in the actual taking of private property, the court having jurisdiction of the subject matter and of the parties may properly determine the just compensation to be paid therefor. In differentiating between the respective provinces of the legislature and of the courts in the exercise of the power of eminent domain, this court in State ex rel. Smith v. Van Reed, 125 Minn. 194, 196, 145 N. W. 967, 968, said:

"* * * The legislature can take private property against the will of the owner only for public use and after just compensation to the owner has been paid or secured. Except as restricted and controlled by these two requirements, the power of the legislature to take private property is unlimited and its determination so to do conclusive. Whether the use be public and whether proper compensation has been made are judicial questions, the final determination of which rests with the courts. All other questions involved in the taking of private property are of a legislative nature; and the determination of such questions by the legislature, or by an agency established by and acting under the authority of the legislature, is final and cannot be reviewed by the courts."

The same rule is set forth in State, by Benson, v. Stanley, 188 Minn.

390, 247 N. W. 509, *supra;* State, by Hilton, v. Voll, 155 Minn. 72, 192 N. W. 188; and State ex rel. Utick v. Board of Co. Commrs. 87 Minn. 325, 92 N. W. 216, 60 L. R. A. 161.

■ Flooding of land which results in serious interruption to its common and necessary use is a "taking" of the property. Pumpelly v. Green Bay Co. 13 U. S. (Wall.) 166, 181, 20 L. ed. 557. There the court said:

"* * * where real estate is actually invaded by superinduced additions of water, earth, sand, or other material, or by having any artificial structure placed on it, so as to effectually destroy or impair its usefulness, it is a taking, within the meaning of the Constitution."

That case was cited and followed by this court in Weaver v. Mississippi & Rum River Boom Co. 28 Minn. 534, 539, 11 N. W. 114.

The court in the present case is not compelling the condemnation of property. It is merely enforcing Minn. Const. art. 1, § 13, which provides: "Private property shall not be taken, destroyed or damaged for public use, without just compensation therefor first paid or secured." This provision limits the state's right of eminent domain just as that of the federal government is limited by U. S. Const. Amend. V. State ex rel. Smith v. Van Reed, 125 Minn. 194, 145 N. W. 967, *supra*.

The United States Supreme Court, in United States v. Lynah, 188 U. S. 445, 469, 23 S. Ct. 349, 47 L. ed. 539, held that the turning of a valuable rice plantation into an irreclaimable and valueless bog, as the necessary result of an improvement in navigation undertaken by the United States government, is a "taking" of the land, within the meaning of the Fifth Amendment. Flooding of land was held to be a "taking" in Finnell v. Pitts, 222 Ala. 290, 132 So. 2. A different result was reached in Sanguinetti v. United States, 264 U. S. 146, 44 S. Ct. 264, 68 L. ed. 608, for the reason that it did not appear that the flooding was directly attributable to the improvement rather than to natural conditions.

■ The project here involved was specifically authorized by L. 1935, c. 51, § 2, which reads:

"In extending work relief or re-employment for needy, destitute and disabled persons within the State of Minnesota, the Council may undertake projects involving flood control, water supply, water diversion, control of erosion, reforestation and afforestation, and recreation and any other project which will aid in the conservation and development of the natural resources of the State and for the promotion and conservation of the health, safety and general welfare of the people of the state.

"The Council is authorized to acquire by gift, purchase, condemnation proceedings under Mason's Minnesota Statutes of 1927, Chapter 41, as amended, or otherwise, any land needed to carry on the work relief and employment herein provided for and, in appropriate cases, to convey land to the United States needed for projects financed in whole or in part by the United States."

In instituting and conducting the proceedings, the attorney general complied strictly with the applicable provisions of Minn. St. 1941, c. 117 (Mason St. 1927, c. 41). Paragraph III of the petition states the purposes for which the lands were to be taken as required by *Id.* § 117.05 (§ 6541). It reads:

"That the purposes for which said lands are to be acquired is to create and perpetually maintain a reservoir or reservoirs for the storage and the adequate supply of water in Big Stone Lake and to perpetually regulate and control floods all of which will aid in the conservation and development of the natural resources of the State and in the promotion and conservation of the public health, safety, and general welfare of the people of the State of Minnesota, and to that end, and for the purposes stated, to build, erect and perpetually maintain dams, dikes, spillways, and embankments, in, along and across the Minnesota River and Valley as shown on the map or plat attached hereto marked 'Exhibit A' and made part hereof together with such other dams, dikes, spillways, embankments and any and all other works necessary to perpetually maintain the

water in the reservoir created thereby at an established elevation not to exceed 968 feet sea level datum as shown and indicated by the contours and elevations on said plat 'Exhibit A' which elevation has been established as more particularly hereinafter set forth."

It is apparent from the allegations of the verified petition, which stand undenied, and from the findings of the court based thereon that the completed project conformed with the one authorized by L. 1935, c. 51, and contemplated in the original proceedings. We see no merit in the state's contention that the power of the executive council was so limited as to preclude it from taking the lands necessary to permit the construction of the project contemplated by this act.

■ Nor do we find any merit in the contention of the state that "whatever power the executive council had was terminated before the petitions in intervention were heard or orders made thereon." When petitioners' lands were taken in 1937 there were ample funds to compensate them for their damage. However, it is no defense that there are no longer funds available from the appropriation made for the original project. Under the constitutional provision that "private property shall not be taken, destroyed or damaged for public use, without just compensation therefor first paid or secured," the "security" is sufficient if the amount when determined is made a charge upon the public treasury, either of the state or of some subdivision thereof. State ex rel. McFarland v. Erskine, 165 Minn. 303, 305, 206 N. W. 447; Johnson v. Town of Clontarf, 98 Minn. 281, 108 N. W. 521; State v. Messenger, 27 Minn. 119, 6 N. W. 457. If the state were permitted to set up as a defense lack of funds appropriated, it would be able to avoid entirely the constitutional limitation set upon its power of eminent domain. In each instance, having taken lands from private individuals, it could refuse to compensate on the ground that it had not provided funds or that the funds provided were insufficient. It is to be noted also that by L. 1943, c. 476, § 1, the commissioner of conservation is authorized to complete the Big Stone Lake project, and by § 2 he is empowered to acquire additional lands necessary therefor. The

state cannot avoid liability for lands already taken, on the ground that the funds provided for the project are exhausted or that there are no available funds, and we have no right to assume that the legislature will ignore the constitutional mandate of art. 1, § 13, prohibiting the taking of private property without just compensation therefor. See Commercial Station Post Office v. United States (8 Cir.) 48 F. (2d) 183.

■ Jurisdiction appearing, the next question concerns whether or not on the record here presented the trial court properly allowed the petitioners to intervene.

Minn. St. 1941, § 544.13 (Mason St. 1927, § 9263), provides:

"Any person having such an interest in the matter in litigation between others that he may either gain or lose by the direct legal effect of the judgment therein may serve a complaint in the pending action, at any time before the trial begins, alleging the facts which show such interest, and demanding appropriate relief against either or both of the parties."

It is true that the original controversy between the state and the owners of the land condemned involved the amount of compensation due them individually for the taking. But the clause "that he may either gain or lose by the direct legal effect of the judgment therein" has been construed to mean that the person gains or loses by becoming a party to the action, not that there is a gain or loss to him if he does not become a party. Faricy v. St. Paul Inv. & Sav. Society, 110 Minn. 311, 125 N. W. 676. It is apparent that petitioners would stand to gain or lose by the decision if they were made parties to the condemnation proceedings.

Even if petitioners had not shown themselves entitled to come within the provisions of the intervention statute, the court in the exercise of its inherent power could permit them to come into the proceedings. Veranth v. Moravitz, 205 Minn. 24, 284 N. W. 849, held that the court had the power, unaffected by statute, to bring a party before it or permit him to come in voluntarily at any time

in the proceedings, as a party necessary for the complete administration of justice.

The controlling case on the question of intervention in condemnation proceedings in this state is State, by Benson, v. Stanley, 188 Minn. 390, 247 N. W. 509, *supra*. That case involved a situation where the state had instituted condemnation for a right of way for a trunk highway, and in the process of construction water was diverted onto land which had not been included in the condemnation or described in the petition, although the owner of the land, Matthew Keeley, was a party to the proceedings by reason of his ownership of other affected property. Keeley petitioned the district court to include the omitted 40-acre tract, and the petition was granted. Later, the court of its own motion and on the strength of State, by Benson, v. Erickson, 185 Minn. 60, 239 N. W. 908, vacated the order. An appeal was taken to this court, where it was held that Keeley had a right to have the forty in question included in the condemnation, and the decision of the district court was overruled. As bearing upon his right to intervene, Mr. Justice Dibell, speaking for this court, said (188 Minn. 394, 247 N. W. 510):

"* * * Since the state has chosen to invoke the jurisdiction of the court in the establishment of a comprehensive trunk highway and has chosen to use and damage the defendant's 40 without condemning it, we hold that the landowner may intervene by motion in the condemnation proceeding and that the court may say to the state that it must bring the land of the defendant, concededly taken and damaged, into the proceeding for the assessment of compensation. And this seems almost a necessary result of the constitutional provisions mentioned. The state cannot, with decent regard for the due process of law provision, and the provision giving everybody a remedy for wrong done his property, and the special provision against the taking of property for public use without compensation, leave out property which it uses or damages in a public project and prevent the owner from having compensation, all because it cannot be sued."

The state concedes that the decision in the Stanley case is out of harmony with what it contends the law should be and attempts to distinguish that case from the appeals here under consideration. As we view the cases, there is no substantial distinction except that the Stanley case involved a highway proceeding and the present appeals involve drainage projects. However, the general statutes relative to condemnation, Minn. St. 1941, c. 117 (Mason St. 1927, c. 41), were the basis of procedure in the Stanley case, and it is the procedure specifically authorized by L. 1935, c. 51, § 2, in the instant cases. There was a "taking" in each instance, and the applicable principles are the same.

The result in United States v. Lynah, 188 U. S. 445, 470, 23 S. Ct. 349, 357, 47 L. ed. 539, *supra,* is the same as that in the Stanley case and as that which petitioners seek in the instant case. In the Lynah case, with reference to its holding that title to the land passed to the government, the court said:

"* * * Of course, it results from this that the proceeding must be regarded as an actual appropriation of the land, including the possession, the right of possession and the fee; and when the amount awarded as compensation is paid the title, the fee, with whatever rights may attach thereto—in this case those at least which belong to a riparian proprietor—pass to the government and it becomes henceforth the full owner."

When there has arisen an apparent conflict between the rules that an individual may not sue the state without its permission, and that the state may not take or damage property without making just compensation therefor, other courts have arrived at the same conclusion as that reached in the Stanley case. The court in Riggs v. State Road Commr. 120 W. Va. 298, 197 S. E. 813, granted a writ of *mandamus* requiring institution of proceedings to ascertain damages caused by highway construction where the commissioner failed to do so within a reasonable time after completion of the work. The same relief was granted in Gould v. State Highway Comm. 112 N. J. Eq. 389, 164 A. 296. In State Road Dept. v. Tharp, 146 Fla. 745, 749, 1 So. (2d) 868, 870, the court said:

"American democracy is a distinct departure from other democracies in that we place the emphasis on the individual and protect him in his personal property rights against the State and all other assailants. The State may condemn his property for public use and pay a just compensation for it but it will not be permitted to grab or take it by force and the doctrine of non-suability should not be so construed."

It is certainly not in accord with American democracy to permit the state to take private property by other than legal means and then to defend itself by a plea of nonsuability. The cases cited above go even further than the Stanley case, which permits intervention in a pending proceeding, in that they permit a damaged landowner to compel the institution of proceedings by *mandamus*.

■ The state contends that respondents are barred by laches because more than seven years have elapsed since the commencement of the condemnation proceedings and more than four years since the serving of the first petition in intervention. "Laches in a general sense is such negligence in bringing an action or otherwise asserting one's right as will preclude him from obtaining equitable relief." Lloyd v. Simons, 97 Minn. 315, 317, 105 N. W. 902. The doctrine of laches depends entirely upon the peculiar circumstances surrounding each case, upon the nature of the claim, and whether the delay has been unnecessary and unreasonable. St. P. M. & M. Ry. Co. v. Eckel, 82 Minn. 278, 84 N. W. 1008. Lapse of time is only one of the considerations involved in the defense of laches. A party is held barred where the delay is so long and the circumstances of such character as to establish a relinquishment or abandonment of the right. Ricker v. J. L. Owens Co. 149 Minn. 130, 182 N. W. 960. The main question to be determined is whether the defendant will be prejudiced—whether he will be placed in a position to suffer injury—if the remedy sought is granted. In general, laches depends on whether the delay has been such as to make it inequitable to grant the desired relief. Peterson v. Schober, 192 Minn. 315, 256 N. W. 308.

The status of the state is, as regards the petitioners, the same as it was seven years ago. It has not so changed its position relying on the nonaction of the respondents as to make it inequitable for the court to grant the relief sought. The court here cannot say, under the facts, that the district court abused its discretion in holding the delay necessary and reasonable and allowing the respondents to intervene seven years after the condemnation proceedings were instituted.

The orders appealed from in Case No. 33499 are affirmed.

## CASE No. 33523

■ As heretofore stated, the state appealed to this court (Case No. 33499) from the order of October 7, 1942, enlarging the proceedings by bringing in the Medbery Minnesota lands, and from the order of October 30, 1942, refusing to vacate that order. This appeal was taken in November 1942. On January 23, 1943, the state moved the court to vacate its previous orders and for an order permitting it to serve and file a proposed answer, a copy of which was attached to the motion papers. The motion was supported by the affidavits of the attorney general and an engineer for the department of conservation. The Medberys appeared specially and objected to the jurisdiction of the court to entertain the motion, for the reason, among others, that the case had been appealed to this court. The trial court was of that opinion and denied the state's motion. In this the court was correct.

"After an appeal is perfected the lower court, * * * cannot properly make any order or render any decision affecting the order or judgment appealed from, except to amend the same to the end that it may correctly express the original intention of the court."

1 Dunnell, Dig. & Supp. § 288; Bock v. Sauk Center Grocery Co. 100 Minn. 71, 110 N. W. 257, 9 L.R.A.(N.S.) 1054, 10 Ann. Cas. 802; Floberg v. Joslin, 75 Minn. 75, 77 N. W. 557; United States Inv. Corp. v. Ulrickson, 84 Minn. 14, 86 N. W. 613, 87 A. S. R. 326. It appears to be conceded that the appeal to this court was perfected before the motion for leave to answer was made.

The order appealed from in Case No. 33523 is affirmed without prejudice to the state to apply for permission to serve and file its proposed answer after the case is remanded to the court below.

## CASE No. 33522

■ This appeal is from an order overruling a demurrer to the petition in intervention of the Big Stone Canning Company. It raises the same jurisdictional questions raised in Case No. 33499, involving the Medbery Minnesota lands, and what has been said in that case is applicable here. The demurrer also raises the question as to whether the petition in intervention states a cause of action. It alleges in substance that petitioner is the owner of certain de-scribed lands containing about 335 acres; that said lands are located about two miles south of the shores of Big Stone Lake; that prior to the acts complained of the Whetstone River emptied into the Minnesota River at a point several miles south of petitioner's farm; that it emptied large volumes of water into the Minnesota River but caused little damage to petitioner's land because of cer-tain dikes and embankments constructed by petitioner along the banks of the Whetstone River.

It also alleges the institution by the state of the condemnation proceedings here involved; that in connection therewith certain dams, dikes, and reservoirs were constructed at the lake; that the channel of the Whetstone River was changed and the waters of the river diverted into the lake, causing the levels thereof to be raised; that other dikes and dams were constructed along the Minnesota River to the south of petitioner's lands; that such construction, and all thereof, caused the waters to flood petitioner's lands, rendering approximately one-third of it unfit for any purpose and causing great damage to the balance of said lands, amounting to the taking thereof.

Finally, the petition alleges that the proceedings were instituted for the purpose of acquiring land under the power of eminent domain so that the state might create and perpetually maintain a reservoir for the storage of waters and for flood control and to

aid in the conservation and development of the natural resources of the state and in the promotion and conservation of public health; that the condemnation proceedings are pending; that petitioner has not been made a party thereto; and that the state has not compensated it for the taking of said lands. Petitioner prayed for leave to intervene so that its damages might be ascertained and paid.

The petition in intervention states a cause of action, and the demurrer thereto was properly overruled.

The order appealed from in Case No. 33522 is affirmed.

### CASE No. 33446

■ The state contends that regardless of the right of the Medberys to have their Minnesota land brought into the condemnation proceedings the court is without jurisdiction to bring in the South Dakota land. As heretofore stated, the legislature, in order to provide work and other relief for the state's needy citizens, enacted L. 1935, c. 51. To effectuate the statutory purpose, it created its own agency to acquire by gift, purchase, or condemnation needed lands for the construction and maintenance of the designated improvement and appropriated $5,000,000 with which to accomplish that purpose.

In virtue of the authority of the act, the agency proceeded with the acquisition of the needed land. In so doing, it appropriated the property of these interveners and subjected the same to the identical uses and purposes as all other property acquired in its suit to condemn. The taking, that is, the appropriation, is not disputed. The property so appropriated has become, through the appropriation and subsequent use, an integral part of the project.

Under the constitutional prohibition against taking property without compensation first paid or secured, there was necessarily imposed the immediate duty to pay for it. With the acquisition, whether by means of condemnation or purchase, the duty to compensate at once arose; and in that regard no distinction can be drawn between property in Minnesota and an adjoining part of the same farm unit located in the neighboring state of South Dakota.

Since the act provides for the acquisition by the agency of property in South Dakota for the identical purpose here intended and such acquisition may be by gift, purchase, or condemnation, it seems logically to follow that the right of compensation is a personal one belonging to the landowner and that he may come into the courts of this state for the purpose of acquiring the same relief for the taking as is afforded for the taking of property on this side of the boundary line. The mere fact that condemnation as to the South Dakota property could not, as such, vest in the courts of our jurisdiction is not the problem confronting us. The question is whether the owners are without redress because they are nonresidents and because the land taken is outside the state of Minnesota. If the property had been purchased under a valid contract and a dispute had arisen as to its enforcement, there can be little doubt that our courts could exercise jurisdiction to hear and determine the facts. We have held (5 Dunnell, Dig. & Supp. § 8780) : "It is not the breach of the contract, but the contract itself, that gives the right to an action for specific performance." This being true, then, obviously, our courts would have jurisdiction of the parties and of the subject matter here. Such proceedings are considered to be *in personam* rather than *in rem*. A specific performance "in its essential particulars" is personal and *"in rem* only incidentally." *Id*. Dig. § 8771.

Under L. 1935, c. 51, the agency is authorized to acquire property in South Dakota upon the same basis as here. Does the state or its agency fear that its rights are less likely to receive just treatment in the courts of this state than in South Dakota? Surely, the state cannot justly object to jurisdiction here on that ground.

The question of suing the state without its permission does not arise in connection with petitioners' land in South Dakota. The state acquires title to land outside its territorial limits in a proprietary capacity; and as to this property it cannot claim sovereign power or immunity from suit. State of Georgia v. City of Chattanooga, 264 U. S. 472, 480, 481, 44 S. Ct. 369, 68 L. ed. 796; Dodge v.

Briggs (5 Cir.) 27 F. 160; Burbank v. Fay, 65 N. Y. 57; 59 C. J., States, p. 166, § 277; 29 C. J. S., Eminent Domain, p. 877, § 86.

It seems to us that the state should be required to pay for land it has taken for public purposes, regardless of whether it lies within or without its territorial limits, if effect is to be given to Minn. Const. art. 1, § 13, and to U. S. Const. Amend. XIV, the applicable part of which reads:

"* * * No state shall make or enforce any law which shall abridge the privileges, or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

The United States Supreme Court, in C. B. & Q. R. Co. v. City of Chicago, 166 U. S. 226, 236, 17 S. Ct. 581, 584, 41 L. ed. 979, 984, in discussing the question of due process, said:

"* * * Due process of law as applied to judicial proceedings instituted for the taking of private property for public use means, therefore, such process as recognizes the right of the owner to be compensated if his property be wrested from him and transferred to the public. The mere form of the proceeding instituted against the owner, even if he be admitted to defend, cannot convert the process used into due process of law, if the necessary result be to deprive him of his property without compensation." 1 Dunnell, Dig. § 1637; G. N. Ry. Co. v. City of Minneapolis, 136 Minn. 1, 161 N. W. 231.

If this were a proceeding to condemn the South Dakota land over the protest of the owners, an entirely different situation would be presented. Here, however, the project for which the land was taken has been completed. The owners were not made parties to the proceedings and have not been compensated for the taking. They come into court, submit themselves to its jurisdiction, and ask that they be made parties, to the end that they be compensated for the taking. Unless the state and federal constitutional provisions hereinbefore referred to are to be ignored, they should be permitted

to intervene. The court having jurisdiction to entertain the petition, prohibition is not a proper remedy.

Writ discharged in Case No. 33446.

---

MAGNEY, JUSTICE (dissenting).

CASE No. 33446

The land involved lies in the state of South Dakota. The condemnation proceedings are pending in Big Stone county, Minnesota. The owners of this land are attempting to compel the state of Minnesota to condemn it by having it included in the Minnesota proceedings and are asking that the damages to their South Dakota lands be assessed by commissioners appointed or to be appointed in Big Stone county from residents of that county.

The state is objecting on the ground that the courts in Minnesota have no jurisdiction to condemn lands outside the state.

By virtue of its power of eminent domain, a state may acquire lands within its own boundaries owned by another state. The owner state cannot in such a situation claim sovereign power or immunity from suit. The state as a mere proprietor is in most respects to be treated like other proprietors. This is not such a case. The question here involves the exercise of the sovereign power of eminent domain by a state over lands lying outside its territorial limits. In my opinion, it has no such extraterritorial power. In 18 Am. Jur., Eminent Domain, p. 645, § 19, it is stated:

"Within its own jurisdiction each state possesses the sovereign power of eminent domain. * * * Like other rights of sovereignty, the power is limited to the jurisdiction of the state. No state can take or authorize the taking of property situated in another state, and each state holds all the property in its territory free from the eminent domain of another state and cannot be compelled to surrender its property to another state in any way."

1 Cooley, Const. Lim. (8 ed.) p. 248, states:

"The legislative authority of every State must spend its force within the territorial limits of the State * * *."

In 1 Lewis, Eminent Domain (3 ed.) p. 701, § 385, it is stated:

"It is a general rule that statutes have no extra-territorial effect. It follows that one State cannot authorize the condemnation of property in another State; also, that it cannot authorize works which will produce actionable damages in another state, * * *"

In 1 Nichols, Eminent Domain (2 ed.) p. 92, § 28, we find the comment:

"There is one limitation upon the power of eminent domain which depends upon no express constitutional provision. The powers of a sovereign state, however vast in their character and searching in their extent, are inherently limited to subjects within the jurisdiction of the state, and any attempt to exercise governmental powers in another state is necessarily void. A state therefore cannot take or authorize the taking of property or rights in property situated in another state, and, conversely, each state holds all the property within its limits free from the eminent domain of any other state and cannot be compelled to surrender such property to another state in any way.

"No case of a state openly attempting to condemn land within another state against the will of the latter has arisen or is likely to arise, though the courts have had to construe statutes, authorizing in general terms the condemnation of interstate bridges, as giving no power to take that part of the bridge lying beyond the boundary of the state in which the statute was enacted."

In Grover I. & L. Co. v. Lovella Ditch, R. & I. Co. 21 Wyo. 204, 247, 131 P. 43, 56, L. R. A. 1916C, 1275, Ann. Cas. 1915D, 1207, where the court held that under the power of eminent domain a state cannot take or authorize the taking of property or rights in property situated in another state, it said, quoting from McCarter v. Hudson County Water Co. 70 N. J. Eq. 695, 717, 65 A. 489, 14 L.R.A. (N.S.) 197, 207, 118 A. S. R. 754, 774, 10 Ann. Cas. 116, 125, that "one state cannot expropriate for its public purposes property

within the territory of another state." In Holyoke W. P. Co. v. Connecticut River Co. 52 Conn. 570, 575, the court makes this statement:

"* * * The question has arisen whether, by virtue of the right of eminent domain, one state can take, or subject to public use, land in another state, and the decisions have naturally been against such a power."

The Supreme Court of the United States, in Pollard v. Hagan, 3 U. S. (How.) 212, 230, 11 L. ed. 565, passed on this question and stated:

"* * * This right of eminent domain over the shores and the soils under the navigable waters, for all municipal purposes, belongs exclusively to the states within their respective territorial jurisdictions, and they, and they only, have the constitutional power to exercise it."

See also United States v. Ames, 1 Woodb. & M. (1 Cir.) 76, Fed. Cas. No. 14,441; Walker v. Flint (8 Cir.) 7 F. 435; Twin City Power Co. v. Savannah R. Elec. Co. 163 S. C. 438, 161 S. E. 750; County Court v. Louisa & Fort Gay Bridge Co. (D. C.) 46 F. Supp. 1.

In Mannville Co. v. City of Worcester, 138 Mass. 89, 90, 52 Am. R. 261, 262, the court comments: "Of course, the laws of Rhode Island cannot subject Massachusetts land to a servitude."

I find no authorities holding that a state can extend its sovereignty beyond its own territorial limits. If this were a case where the state attempted to condemn land in the state of South Dakota and the property owner objected, this court would undoubtedly hold that the state's sovereignty could not be extended beyond its boundary. It should follow that the state cannot be compelled to exercise a power of sovereignty which it does not possess. It is true that in this case the property owners consent to the exercise of the power by the state of Minnesota, in fact, are attempting to compel it. Neither their consent, nor authorization by the legislature of this state, can extend the sovereignty of the

state of Minnesota over lands in South Dakota. There is nothing in the record showing consent by the state of South Dakota to have its sovereignty invaded.

In condemnation proceedings in this state, only residents of the county in which the land is situated may be appointed by the court as commissioners to fix the damages. I see no authority for a Minnesota court to appoint residents of a Minnesota county to appraise damages to land lying in the state of South Dakota.

For the reasons above set forth and on the authorities cited, I respectfully dissent.

UPON APPLICATION FOR REARGUMENT.

On January 3, 1944, the following opinion was filed:

PER CURIAM.

The state has moved for a rehearing in these cases on the following questions: (1) Whether our original opinion should be so clarified as to determine that the lands involved in this litigation actually have been taken by the state in these condemnation proceedings; and (2) whether the state is to be given the right "to answer the petitions in intervention in all of the above entitled actions" so that not only the question of the actual taking may be litigated but also, if the taking is shown, that the state may litigate the question of petitioners' damages for the property so taken.

The court below has determined upon adequate proof that there has been an actual taking and that the property so taken was for a public use. Only one question remains, i. e., what is the value of each parcel of property so taken? That question should be heard and determined in the usual court. Our original opinion, with the modification mentioned, will stand.

Petition denied.

MR. JUSTICE LORING, absent because of accidental injuries, took no part in the consideration or decision of these cases.

MR. JUSTICE PETERSON, having been of counsel below, took no part in the consideration or decision of these cases.