## No. 13,554.

HEIMBECHER *v*. CITY AND COUNTY OF DENVER ET AL.

(50 P. [2d] 785)

Decided October 14, 1935.

Mr. Con K. O'Byrne, Messrs. Morrissey, Mahoney & Scofield, for plaintiff in error.

Mr. James D. Parriott, Mr. Frederick P. Cranston, Mr. Frank L. Hays, for defendants in error.

*In Department.*

Mr. Justice Bouck delivered the opinion of the court.

This is a mandamus proceeding commenced in the district court by one Heimbecher against the council, the manager, and the auditor of the City and County of Denver. The court's judgment dismissing the alternative writ is here for review.

The controversy between the parties reaches back to a suit instituted in 1926 by Denver to condemn, under its power of eminent domain, certain lands of Heimbecher's.

This suit was in pursuance of a municipal program looking to flood prevention by straightening the channel of the South Platte river and constructing an embankment, or dike, along its banks. Others of the lands required were obtained through voluntary sale by the owners. Still other lands were taken by condemnation.

The first trial of the Heimbecher case resulted in a $20,000 jury verdict. The award based thereon was then brought here by the city, and we set it aside as excessive. *City and County of Denver v. Tondall*, 86 Colo. 372, 282 Pac. 191. At the second trial a jury assessed the damages at $8,050. Heimbecher, deeming this second award inadequate, asked this court to set it aside, but in due course we affirmed the judgment. *Heimbecher v. Denver*, 90 Colo. 346, 9 P. (2d) 280.

The mandamus proceedings now involved were begun by Heimbecher to compel Denver, through its appropriate officers, to pay the final award.

Denver resisted on the following principal grounds: (1) That the judgment against Heimbecher in previous mandamus proceedings of the Denver district court is res judicata as to the issues herein; (2) that the judgment upon the second trial of the condemnation suit was conditional, it being urged that no obligation attached thereto in view of no payment of the award ever having been made so as to render the judgment absolute; (3) that Denver had a right to, and did, abandon the condemnation suit and therefore no duty devolves upon its officers by reason of the judgment therein.

■■ 1. In our opinion the disposition of the first mandamus case did not render it res judicata as to the present one. In the former case, it is true, Denver was made a respondent, as it is in this; but it is clear that the purpose and scope of the two actions must be determined by examination of the pleadings and issues therein. From such examination it is readily apparent that the first case was radically different from the second. For instance, the mandamus then sought was to compel official action

primarily by Denver's manager of improvements and parks, and only secondarily by its auditor in regard to the action of the manager. Moreover, it was directed against a special fund of the city's treasury. There is no doubt that those original mandamus proceedings were properly dismissed. The manager's duties and powers did not include the fiscal acts there attempted to be compelled at his hands. Furthermore, the special fund there relied upon was plainly not available. In short, there was no cause of action stated at all and the case was properly dismissed. The city contends that Heimbecher lost any possible rights by failing to present the adverse judgment to this court for review. A judicial review of the judgment there entered would have accomplished nothing. It was not a case where even the most liberal amendments could reasonably have supplemented the total lack of a cause of action.

A writ of mandamus lies only where the petitioner has a clear legal right to have the respondent perform a clear legal duty. *Gunter v. Walpole,* 65 Colo. 234, 176 Pac. 290; *People ex rel. v. Butler,* 24 Colo. 401, 51 Pac. 510. In the first mandamus case, neither of these requisites was present.

The case at bar, in contrast with the preceding one, displays proceedings against the council, the mayor, and the auditor, and does not concern any special fund of the city. The reasons for selecting the particular respondents in the case are clear. The council is properly a respondent because, under the statutes governing the exercise of a city's right of eminent domain, the council is the body which is to provide by ordinance for payment of awards, as will appear below. Inclusion of the mayor, who is the one that approves or disapproves of ordinances, is equally correct. The addition of the auditor, on account of his duties arising only after an appropriation has been made by ordinance, is likewise regular (his situation here being easily distinguishable from his position when linked with an official—like the manager of im-

provements and parks—who has no power as such over a municipal fund).

2. Having disposed adversely of the city's defense of res judicata, we next consider the contention that the judgment in the condemnation suit is conditional. Doubtless in the ordinary nonmunicipal condemnation suit, the petitioner has a right to withdraw from it or dismiss it even after a judgment of award has been entered. *Denver & N. O. R. R. Co. v. Lamborn,* 8 Colo. 380, 8 Pac. 582. No one will contend that the title to condemned property vests in the petitioner before he has made actual payment of the award. That, however, is far from saying that under no circumstances does the property owner acquire any right whatever by the award until payment is made. The opinion of this court in the Lamborn case, just cited, employed language that seems to justify the unqualified rule urged by the city. But that language is broader than the situation which was then presented to us required, and must be read and limited in the light of the particular facts there before the court, and the law then in force. The Lamborn case was decided a quarter of a century before enactment of the 1911 Act hereinafter discussed, which now regulates municipal condemnation proceedings.

It would manifestly be unfair and unjust to subject the owner of property to the extraordinary power of eminent domain without ever terminating the period during which the petitioner in the eminent domain proceedings may continue supinely to refrain from his election whether to pay for the property or not. When is that period to be deemed at an end?

The attitude of the city in this case, apparently based as it is upon a claim of right to prolong the proceedings without limit and then to nullify them by arbitrary abandonment, necessitates an answer to the question in so far as it applies to the facts therein. The contention which we are now discussing, as to the conditional character of the judgment, is so nearly related to the city's

third argument, in regard to the alleged right and alleged fact of abandonment, that from now on we shall deal with them together in this opinion.

First, however, in order properly to appraise the concrete situation presented by the record, let us consider what has happened. Here was a definite municipal program of flood prevention work requiring the city's ownership of a continuous stretch of land for about a mile along the bank of the river. All the owners except Heimbecher have received the purchase price of their respective tracts, some by mutual agreement, others upon condemnation. His land alone lies unused and uncompensated, visibly set apart by the protracted inaction of the city, apparently a misfit in the scheme of things as planned by the flood-prevention ordinance, and bearing a latent peril in the event of actual flood. There could obviously be nothing but an inherent weakness at the point marked by Heimbecher's unimproved and unbuttressed tract.

We are aided in the present case by the express provisions of the law.

The exercise of the power of eminent domain by municipalities is regulated by general statute. Compiled Laws, 1921, §§9076 to 9096, inclusive (being chapter 129, S. L. 1911). One section of that statute says that after the judgment has been entered by the court "the clerk of said court shall, thirty days after, make a certified copy thereof and deliver same to the clerk of the * * * city and county. Unless other provision is made in the charter of said * * * city and county, for the payment of said awards [in Denver there is no such provision], the council shall, within ninety (90) days after the date of said decree, make, by ordinance, the necessary appropriation for the payment of the compensation for the property condemned, and the proper officers of said * * * city and county, shall thereupon issue the warrants of said * * * city and county, to the respective parties entitled thereto." Id., §9091.

The next section declares: "The attorney for the city,

or city and county, commencing said proceeding shall have the right to withdraw said proceedings, or to dismiss same as to one or more of said defendants, or as to one or more parcels of land, without prejudice, at any stage of the proceedings, upon the petitioner paying the costs thereof." Id., §9092.

These two sections, when read in conjunction with each other, mean that the "proceedings" mentioned in section 9092 come to an end at the expiration of the 90 days specified in section 9091. If by the end of that period the municipal council has not taken steps toward making the required appropriation, and if the proceedings have not been dismissed in whole or in part before or within that period, the time for dismissal has gone by, and the judgment has thereby become absolute and binding upon both parties. The judgment on which the case at bar is founded was entered in the lower court on February 10, 1930, and was affirmed in this court on March 7, 1932. No petition for rehearing was filed, and consequently the judgment became final on March 23, 1932. The city cites, as authority opposed to our view hereinabove expressed, the case of *Post Printing Co. v. Denver,* 68 Colo. 50, 189 Pac. 39, and quotes from the opinion of Mr. Justice Teller the following language (found at page 52 [Pac. page 40]): "The discontinuance of such a proceeding was within the power of the city at any time prior to the payment or deposit of the sums awarded as compensation for the property proposed to be taken." When that decision was made, the act of 1911 had, indeed, already become law. The passage quoted, however, was purely dictum; there was nothing to call for a determination of the point; nor were the above sections 9091 and 9092 discussed or their effect considered.

We hold that under the sections in question the city had no right to dismiss or abandon the condemnation suit after the expiration of the ninety-day period.

For the purposes of this case it would not be neces-

sary to determine the exact meaning attachable to the aforesaid sections of the 1911 statute, nor whether section 9091 is unqualifiedly mandatory in reality, as it is in form. We do hold it to be mandatory at least to the extent just explained. We might, however, even concede —without deciding—that the right of a municipality to withdraw from condemnation proceedings is as plenary as is the right accorded to other petitioners for condemnation under our former decisions, where no such statutory provision as section 9091 was involved. Wholly apart from any statute, the judgment here must be reversed and replaced by one in favor of Heimbecher. Our reasons for this determination follow.

 It appears here that after the second trial of the condemnation suit it was Heimbecher who asked for a review by this court (not the city, which was the successful plaintiff in error when that suit was first here in *Denver v. Tondall, supra*). The second condemnation judgment, so complained of by Heimbecher as inadequate, had been rendered in the district court on February 10, 1930. It was affirmed by this court on March 7, 1932. The second mandamus case brought to enforce payment of the second award—and now before us for consideration—was commenced on February 10, 1933. The city, so far from indicating any intention of withdrawing from, or abandoning, the condemnation proceedings on account of viewing the award as excessive, joined issue in this court and asked us directly to affirm the judgment award of $8,050 in *Heimbecher v. Denver, supra*. Indeed, on page 26 of its brief in the latter case, filed here on September 24, 1930, the city made this statement: "* * * two juries and a commission in condemnation, together with a number of qualified experts, who testified at both trials, are practically agreed as to the value of the Heimbecher property taken in this proceeding and therefore the latter is not in any way injured by any alleged error which might have crept into the record. We, therefore, respectfully submit that this Writ of Er-

ror be dismissed and the case remanded with instructions to enter judgment in favor of the defendant in error [the city]." The evidence before us shows that on the oral argument counsel for the city reinforced this position by contending that the amount awarded by the jury was fairly accurate and comported with what the city experts claimed the land was reasonably worth at that time, and that the damages to the remainder were fixed.

Litigants are not allowed to blow both hot and cold at the same time. After conducting its formal defense on error in the manner stated, the city cannot now contend that the award was excessive in the sense in which excessiveness excuses a failure to complete the statutory taking by paying the price fixed.

The case of *Denver & N. O. R. R. Co. v. Lamborn, supra,* does not contravene the principle we announce. In that case the condemning railroad company was the plaintiff in error, and immediately after judgment in the trial court and at all times thereafter it consistenly contended that the award was excessive. It had a right to exhaust its legal remedies by coming into this court as it did. Such conduct of deliberate opposition is the very reverse of the city's active efforts to bring about the finality of the award involved here. We can neither affirmatively approve, nor silently acquiesce in, the city's present stand. We hold that, by dealing as it did, the city has lost its right to withdraw or abandon. Moreover, we have searched in vain for substantial evidence to indicate the existence of a sufficient withdrawal or abandonment.

Both because the statute, as properly interpreted, is itself decisive and because the facts and circumstances of the litigation also require it, and for the reasons stated, the district court is held to have erred in not issuing a peremptory writ of mandamus commanding the council to pass a proper appropriation ordinance, the mayor to sign it, and the auditor to issue warrants in payment of the appropriation. The judgment must be

reversed, and the case remanded with the direction to proceed, in harmony with this opinion, to the issuance of a peremptory writ.

Judgment reversed with directions.

MR. CHIEF JUSTICE BUTLER and MR. JUSTICE HOLLAND concur.