No. 14,463.

STATE OF COLORADO *v.* COLORADO POSTAL TELEGRAPH-CABLE COMPANY.

(91 P. [2d] 481)

Decided May 29, 1939.

Mr. BYRON G. ROGERS, Attorney General, Mr. CECIL E. SYDNER, Assistant, Mr. HENRY E. LUTZ, for the state.

Messrs. BLOUNT & SILVERSTEIN, for defendant in error.

*En Banc.*

MR. JUSTICE YOUNG delivered the opinion of the court.

THE Colorado Postal Telegraph-Cable Company, a corporation, as plaintiff, instituted an action in the district court of the City and County of Denver, against the state of Colorado, as defendant, to recover $2331.88 alleged to be the amount of damage sustained by plaintiff as a result of being compelled to move its telegraph line and poles to avoid their being injured by the state in the making of certain improvements at the state hospital in Pueblo assumed by both parties to be public improvements. Plaintiff alleged its right to an easement and the location of its lines in a certain alley adjacent to the grounds of the hospital; that without notice to it, the state procured the vacation of the alley and began excavations for the improvement that threatened the destruction of its poles and lines and the interruption of communication through its lines, and that to avoid such interruption and damage and for no other cause or reason plaintiff was forced to, and did, move its lines and poles at a cost of $2331.88. In the light of these facts plaintiff prayed for damages as aforesaid and in the alternative that if not awarded damages in the amount of such cost of relocation that its damages be ascertained as in an eminent domain proceeding by a commission of three freeholders or by a jury of freeholders and judgment entered for the damages so found. Plaintiff prayed also for interest and costs of suit.

The plaintiff caused summons to be issued and served on the Governor and Secretary of State. The Attorney General, appearing specially for the state, moved the

court to quash the summons on substantially the same grounds as were contained in a demurrer subsequently filed. These grounds are hereinafter fully set forth. The motion was denied and the state was given time to demur, or if it so elected, to answer. The Attorney General again appearing specially, demurred to the complaint on the grounds that the complaint ''does not state or contain sufficient or any facts to constitute a cause of action, nor can the plaintiff state sufficient or any facts to constitute a cause of action against the state of Colorado for or on account of any matter or thing in said complaint alleged, * * *: (a) As appears from the complaint herein, this is a suit against the state of Colorado in its sovereign capacity, and said state is immune from suit, whether on contract, or in tort, or otherwise, or at all. (b) That no one whomsoever is authorized to or can accept service for the state of Colorado in any suit soever. (c) Said suit and the relief therein sought is in all things futile, in that no writ of execution could or might issue against the said state of Colorado, or any property soever owned by said state, nor could any property owned by the state of Colorado be sold to satisfy any judgment soever. (d) That no manner or means exists to realize upon any judgment against the state of Colorado save by appropriation of the Legislature alone, nor could or can any state officer pay any judgment soever save by legislative appropriation.'' The demurrer was overruled. The Attorney General elected to stand thereon and judgment was entered on the complaint for the amount prayed for, to wit: $2,331.88, plus interest of $359.98 and costs.

In order that there might be only a legal issue in the case it was stipulated that if any judgment were to be entered against defendant $2331.88 might be considered as the amount of damages sustained with like force and effect as though this amount were duly found by a board of commissioners consisting of three freeholders duly appointed by the court in this cause. There was an express reservation that by so stipulating the defendant did

not waive any of its objections set forth in its motion to quash or in its demurrer.

The issues raised by the demurrer and by the motion to quash are presented here by proper assignments of error.

■■ We are of the opinion that the state is not subject to suit for the tort alleged in plaintiff's complaint. It is contended by the state that it is the general rule, which plaintiff admits, that a state cannot be sued in its own courts without its consent. We have so held. *In re Constitutionality of Substitute for Senate Bill* (Benedictine Sisters case), 21 Colo. 69, 39 Pac. 1088, we said: "We recognize the doctrine that, without constitutional or legislative authority, the state in its sovereign capacity cannot be sued. No such authority exists in this state. This being so, no liability upon contract or tort, if any there be, can be enforced against the state in any of its courts." To the same effect are *Parry v. Board of Corrections,* 93 Colo. 589, 28 P. (2d) 251; *Denver & R. G. Co. v. Castle Rock,* 99 Colo. 340, 62 P. (2d) 1164. However, plaintiff contends that when the state *for public purposes* takes or damages private property without compensation, thereupon the one whose property is so taken or damaged may sue the state by virtue of section 15, article II of the Constitution of Colorado which plaintiff says makes such a suit an exception to the general rule that the state may not be sued without its consent. This section is as follows: "That private property shall not be taken or damaged, for public or private use, without just compensation. Such compensation shall be ascertained by a board of commissioners, of not less than three freeholders, or by a jury, when required by the owner of the property, in such manner as may be prescribed by law, and until the same shall be paid to the owner, or into court for the owner, the property shall not be needlessly disturbed or the proprietary rights of the owner therein divested; and whenever an attempt is made to take private property for a use alleged to be public, the ques-

tion whether the contemplated use be really public shall be a judicial question, and determined as such without regard to any legislative assertion that the use is public."

In support of this contention plaintiff cites the case of *Board of Comr's v. Adler,* 69 Colo. 290, 194 Pac. 621. This was a suit by a landowner for the consequential damages occasioned by the flooding of his land as a result of the filling up or damming of certain of the channels of the Platte river in the lawful operation of building a bridge by the county across the river and grading the approaches thereto. The landowner obtained a judgment in the district court and the county sought a reversal in this court. The opinion of the court does not state nor even suggest that any issue was made or any question raised by either party as to plaintiff's *right to sue the county.* Section 1, chapter 45, '35 C. S. A., was in force when the Adler case was instituted and when it was finally decided. That statute so far as material is as follows: "Each organized county within the state shall be a body corporate and politic, and as such shall be empowered for the following purposes: First—to sue and be sued." At the same time there was in effect section 5, chapter 45, '35 C. S. A. which provided: "In all suits or proceedings, by or against a county, the name in which the county shall sue or be sued shall be, the Board of County Commissioners of the County of . . . . . . ; but this provision shall not prevent county officers, when authorized by law, from suing in their name of office for the benefit of the county."

A re-examination of the assignments of error and the briefs in the Adler case discloses that no issue was raised or argued by either party as to plaintiff's right to sue the county. There was no controversy as to the issues involved which we stated as follows: "Plaintiff in error now contends that the court erred in not sustaining the demurrer to the complaint, and in entering judgment on a verdict for plaintiff, because: First, the county is not liable for a tort; and second, plaintiff can-

not recover under section 15 of Article II of our Constitution, because this court has held that it applies only to proceedings under the eminent domain act.

"Counsel for the defendant in error concede that a county is not liable for the torts of its agents, in the absence of an express statute making it liable; *County Commissioners v. Bish*, 18 Colo. 474, 33 Pac. 184."

That we properly apprehended and stated the issues is evident from recitals contained in the briefs of the respective parties. Counsel for the county stated the issue as follows: "We have made (7) assignments of error, but for the purpose of this case, we will argue but one, as this one will dispose of the whole controversy. The first assignment of error goes to the ruling of the court overruling our demurrer to plaintiff's complaint. The second assignment of error goes to the ruling of the court in refusing to direct a verdict at the close of the plaintiff's testimony. Both of these assignments of error are based upon the proposition that a *county is not liable* in an action for damages based upon negligence, or in other words, for torts." (Italics supplied). Counsel for Adler in his brief said: "The question at issue in our view of the case is really as follows: 'Can a suit *be maintained* against a county for damages which are a consequential result of the construction by a county, in a lawful manner, of a bridge for the use of the general public?' * * * We have no dispute with the counsel for the plaintiff in error as to the general propositions of law advanced by him in his argument, and we are thoroughly in accord with all of the law cited in his brief, and we submit to the broad proposition that *an action cannot be maintained* against a county for the torts of the agents of the county, in the absence of express statutory enactment, or a constitutional or statutory implication, but we do claim that there exists in the state of Colorado either constitutional or statutory provision which imposes upon counties *liability* for damages occasioned through the acts

of the agents of a county, under such circumstances as exist in this case.'' (Italics supplied).

From the foregoing it will be observed that neither this court nor counsel for either party made any suggestion that there was involved any question of the right of a plaintiff to institute a suit against a county and by service of summons secure jurisdiction over the county as a body corporate and politic. The sole question submitted for determination was whether the facts set forth in plaintiff's complaint gave rise to a *liability* on the part of the county. If there was *liability,* the suit, jurisdiction of defendant having been secured, *could be maintained.* The county's contention was that it *was not liable* for the torts of its agents, in the absence of a statute making it *liable.* Referring to this contention we say in the opinion: ''Counsel for the defendant in error [Adler] concede that a county is not liable for the torts of its agents, in the absence of an express statute making it liable; *County Commissioners v. Bish,* 18 Colo. 474, 33 Pac. 184.'' The county contended, and properly so under the rule announced in the case of *North Sterling District v. Dickman,* 59 Colo. 169, 149 Pac. 97, Ann. Cas. 1916 D, 973, that section 15, article II of the Colorado Constitution, had no application to any case except a proceeding in eminent domain; that where no part of the plaintiff's property was taken leaving a residue which was damaged by the taking, plaintiff had no right to be compensated; in other words, that there was no liability on the part of the county to compensate for consequential damages resulting from a public work unless a part of the property had first been taken and the consequential damages were occasioned to the abutting residue. We refused, in the Adler case, to follow this rule laid down in the Dickman case and held that consequential damages caused by the prosecution of a public work *imposed a liability* on the county, and accordingly we affirmed the judgment of the district court awarding damages. The sole mooted question in the Adler case was whether there

was *liability*. It was held there was. In the instant case, therefore, the matter of whether or not there is *liability*, is settled in the affirmative by that case.

If the opinion in the Adler case be read with the issue there mooted and determined clearly in mind, that portion which on casual examination might seem to be authority for plaintiff's contention in the instant case is readily seen not to be so in fact. We used these words: "They [counsel for Adler] contend further that this provision [section 15, article II Colorado Constitution] constitutes express authority for an action against a county *under the facts of this case.*" (Italics supplied). Since counsel for Adler stated the issue to be, "Can a suit *be maintained* against a county for damages which are a consequential result," etc., we think proper interpretation to be placed on our statement, that section 15 "constitutes express authority for an action against a county," is that section 15 is express authority to *maintain* a suit, that it imposes *legal liability* on a county under the facts of that case, rather than that it is express authority *to sue* the county. The liability of the county under the facts of the case, was questioned; the right to sue if liability existed was not questioned. Bearing in mind that the specific issue there confronting us was whether a county was *liable* for consequential injuries occasioned by a public improvement, not whether it could be sued if liability existed, the statements in the opinion are not subject to the construction plaintiff places upon them. We said: "It being a prerogative of the state to be exempt from coercion by suit, a provision of the fundamental law for compensation in case of damage, which is applicable to injuries caused by instrumentalities of the state, or by its agents, and to no other injuries, must be held to except such cases from the exemption." Let us analyze this pronouncement in the light of the context and the issues in the case. We had previously stated that it was conceded by counsel for Adler that a county, a subdivision of the state, was not liable for the torts of its

agents in the absence of statute, or, of course, a constitutional provision making it liable. The prerogative to be exempt from coercion by suit that we had under consideration, and all we had a right to consider under the issues made, was the prerogative of the county to be exempt from coercion, because of *nonliability* for the tort in question. We said the Constitution must be held to except such cases as the Adler case from the exemption. What exemption? Clearly from the exemption from liability for torts, for the county was strenuously contending that the rule announced in the Dickman case, that the constitutional provision in issue was applicable only in eminent domain proceedings and was not applicable to raise a liability in tort. This rule, as pointed out, we repudiated and refused to follow.

Read in the light of its facts the Adler case is authority for the proposition that liability on the part of the state in the instant case exists; but it is not authority for the proposition that the state can be sued to enforce its liability.

If anything other than matters inherent in the record, briefs and opinion in the Adler case were necessary to confirm the correctness of the foregoing analysis of the opinion, it might be found in a situation so significant as to call forth from counsel for plaintiff in this case in their brief, after citing the Adler case as authority for their contention, the following: "The only Colorado case which *seems* to hold to the contrary, in a case involving the *constitutional inhibition above mentioned,* is the Benedictine Sisters case, 21 Colo. 69. None of the other cases involve the taking or damaging of private property for public use. The Adler decision was long subsequent to the Benedictine Sisters case and while the former case was not therein mentioned yet the latter decision controls."

Both Adler and the county were represented by counsel of sufficient industry and discrimination to have cited the Benedictine Sisters case had they conceived that by

any stretch of imagination it was relevant to any issue they were seeking to have determined.

Since counsel for plaintiff in the instant case admit the general rule to be that the state cannot be sued without its consent, and since they ground the exception to that rule which they claim permits the state to be sued solely on section 15, article II of the state Constitution as they contend it was construed in *County Commissioners v. Adler, supra,* our holding that that section of the Constitution relates merely to the matter of liability for an uncompensated taking or injury of property and that the matter of the county's liability is all that was in issue or determined in that case, leaves applicable the admitted general rule that the state, without its consent, cannot be sued.

By reason of the despairing comment contained in the plaintiff's brief concerning its plight if denied the remedy of suit in court to enforce its claim, and required, figuratively speaking, to stand hat in hand as a mendicant before the legislature and the chief executive, we are constrained to say that the ascertainment of the state's constitutional liability and the making of provision to meet it is a proper function of the legislative department of government *(In re Constitutionality of Substitute for Senate Bill, supra)* and that the members of the legislative branch of the government and the chief executive are obligated by the same oath as are the judges of the courts to support the Constitution of the state of Colorado, by authority of which not only the judicial, but also the legislative and executive, departments of the state government exist; and under which their powers are fixed and exercised and their obligations defined and performed.

Judgment reversed.

Mr. Justice Francis E. Bouck and Mr. Justice Bakke not participating.