**PEOPLE OF COLORADO ex rel. WATROUS v. DISTRICT COURT OF UNITED STATES FOR DISTRICT OF COLORADO et al.**

No. 4695.

United States Court of Appeals
Tenth Circuit.

Sept. 9, 1953.

---

2. Hubsch v. United States, 5 Cir., 174 F.2d 7, 8.

3. Swartz v. U. S., 59 Ct.Cl. 232.

John P. Holloway, Asst. Atty. Gen., State of Colo. (Duke W. Dunbar, Atty. Gen., State of Colo., H. Lawrence Hinkley, Deputy Atty. Gen., State of Colo., on the briefs), for petitioners.

Frank Delaney, Glenwood Springs, Colo., for respondent.

Before PHILLIPS, Chief Judge, and MURRAH and PICKETT, Circuit Judges.

PHILLIPS, Chief Judge.

By a petition filed in this court, the State of Colorado seeks a writ in the nature of prohibition against the United States District Court for the District

of Colorado [1] and the Honorable William Lee Knous, Judge thereof.

On May 25, 1953, Leslie Baillie, Della Baillie, Neva C. Bryant Reynolds, Catherine Oetken, Bert Savage and Wayne Burdge commenced an action against Mark U. Watrous, as Chief Engineer of the State Highway Commission and of the Department of Highways of the State of Colorado, in the District Court, numbered 4349, Civil, on the docket of that court.

In their complaint in No. 4349 the plaintiffs alleged that it is a civil action arising under the 14th Amendment to the Constitution of the United States and that the matter in controversy, exclusive of interest and costs, exceeds the sum of $3,000 and further alleged these facts:

The Baillies are the owners in fee and in possession of certain land and the improvements thereon, situated in Block 43 of Glenwood Springs, Colorado. The other plaintiffs are the owners in fee and in possession of certain lands and the improvements thereon, situated in Block 44 of Glenwood Springs, Colorado. Grand Avenue is a north and south street in Glenwood Springs. It runs between Blocks 43 and 44 and the lands of plaintiffs abut on such avenue.

The City of Glenwood Springs is divided into two parts by the Colorado River. The parts are connected by a bridge [2] across the river, which affords the only means of passage by vehicles or pedestrians from one part of the city to the other. Grand Avenue is a graded and improved street and is the principal business street of Glenwood Springs. Blocks 43 and 44 are two of the principal business parts of such city. The sidewalks on each side of such avenue are approximately 14 feet in width and the distance from curb to curb is 75 feet. The entire width of such street is available as a means of ingress and egress for plaintiffs' properties. An alley extends east and west through Blocks 43 and 44, north of the land of the plaintiffs. The south

approach to the old bridge commences on Grand Avenue at the northerly line of the alley.

In 1930 the City of Glenwood Springs created an improvement district for the improvement of Grand Avenue, which included the lands of the plaintiffs. The grade of such street was established and it was paved and otherwise improved and the property of the plaintiffs was assessed to pay its share of such improvements. Such assessments were paid.

The plaintiffs own the fee title to the land in Grand Avenue on which their lands abut, subject to the right of the public and its agencies to make the ordinary and usual use thereof for street and highway purposes.

Mark U. Watrous is the Chief Engineer of the Department of Highways and the State Highway Commission. Such Department and Commission are agencies of the State of Colorado, created by Chapter 57 of the 1952 Session Laws of Colorado, Watrous is the chief administrative officer of such Department and his duties include the awarding, under the supervision of the Commission, of all contracts for the construction of state highways. The Commission has planned and authorized a so-called state highway project which includes plans to deactivate and dismantle the old bridge and to construct a new bridge and new approaches therefor across the river, the south approach to be located on Grand Avenue in front of the properties of the plaintiffs. Watrous, as Chief Engineer, has let a contract to Harry Gardner and Maurice Gardner to perform all the work on such project and to construct such new bridge and the approaches thereto and to alter the width of the sidewalks along Grand Avenue. The new bridge and the approaches thereto are to be constructed of concrete. The end of the south approach will be 115 feet southerly of the end of the old bridge. The only means for pedestrians to go from one part of the city to the other

---

1. Hereinafter referred to as the District Court.

2. Hereinafter referred to as the old bridge.

will be on two sidewalks, which are to be constructed at the approximate level of the deck of the new bridge and the only place from which pedestrians can reach such bridge sidewalks on the south side of the river will be at the southern terminus of such south approach to the new bridge. The south approach to the new bridge will be a concrete structure 40 feet in width, located in the center of Grand Avenue. The sidewalks on each side of such avenue will be reduced in width from 14 feet to 8 feet on each side of such approach and the vehicular passageways on Grand Avenue on each side of such approach will be only 20 feet in width.

The deck of the new bridge in front of the property of the Baillies will be 7 feet above the present level of Grand Avenue; the deck of the new bridge in front of the property of Reynolds and Oetken will be approximately 6 feet above such level; the deck of the new bridge in front of the property of Savage will be approximately 5 feet above such level; and the deck of the new bridge in front of the property of Burdge will be approximately 5 feet above such level.

The construction of such bridge will block the alley at Grand Avenue.

The defendants, claiming to act as agents and representatives of the State of Colorado and under the authority of such State, have started to remove the sidewalks and surface of such street and to construct the south approach to the new bridge. During the changing of such sidewalks and the construction of such approach, it will be impossible for the plaintiffs to carry on their businesses and when such approach to such bridge has been constructed, the means of ingress and egress for their places of business will be destroyed or greatly impaired.

The Baillies maintain a machine shop, welding and repair shop and garage on their property abutting on Grand Avenue. They have installed machine tools and special equipment of substantial value for the purpose of conducting such business. In the conduct of such business it is necessary for heavy trucks and trailers to be brought into and taken from the building on their property and a lateral clearance of 35 feet is necessary for such purposes. The construction of the new bridge will prevent ingress to and egress from such buildings by trucks and other like vehicles and will prevent its use for the purposes for which it is now being used.

The plaintiffs Reynolds and Oetken carry on the business of a garage, storeroom and automotive repair shop, including a salesroom for the keeping and sale of automobile accessories, on their property abutting on Grand Avenue. They have installed special equipment for the purpose of conducting such repair shop. In the conduct of their business it is necessary for heavy trucks and trailers to be brought into the building on their land and a clearance of 35 feet is required for such purposes. The construction of the approach to such bridge will prevent ingress to and egress from such building and will prevent its use for the purposes for which it is now being used.

The plaintiff Savage conducts a store and mercantile business on the first floor of the building on his property abutting on Grand Avenue and maintains office quarters and quarters for public assembly on the second floor. The construction of the south approach to the new bridge will impair and restrict access to his property and the changing of the sidewalks will divert pedestrian travel from his premises.

The plaintiff Burdge conducts a funeral home on the first floor of the building on his land abutting on Grand Avenue. The approach to the new bridge will interfere with ingress to and egress from his premises for the purposes for which it is now being used and will divert pedestrian travel from such premises.

The rights of plaintiffs to the use of such avenue and their rights of ingress and egress for their places of business are property rights recognized under the laws and Constitution of the State of Colorado. The defendants in No. 4349 intend to deprive such plaintiffs of such

property rights without any hearing to determine the amount of compensation to which plaintiffs are entitled, without the payment of any compensation therefor, and without due process of law.

The plaintiffs in No. 4349 prayed that a temporary injunction be issued enjoining and restraining such defendants and each of them from proceeding with the construction of the new bridge and the approaches thereto, or in anywise interfering with the right of ingress and egress of plaintiffs to and from their properties, unless and until an appropriate action is instituted by the State of Colorado, or its agencies, to determine the amount of compensation to which such plaintiffs are entitled; that upon final hearing, such injunctive order be made permanent, and, in the alternative, that plaintiffs recover money damages.

Thereafter, on June 1, 1953, the plaintiffs in No. 4349 filed a motion for a preliminary injunction.

The defendants appeared specially and moved to quash the summons and dismiss the action in No. 4349 on the ground that the action was a suit against the State of Colorado and the District Court was without jurisdiction. The motion for a preliminary injunction and the motion to quash the summons and dismiss the action were consolidated for hearing. On June 15, 1953, the District Court denied the motion to quash the summons and to dismiss the action and denied the motion for a preliminary injunction, but ordered that Mark U. Watrous, as Chief Engineer of the State Highway Commission and of the Department of Highways, show cause within 20 days from the date of the order why he should not institute condemnation proceedings or other appropriate action, under the laws of Colorado, to determine the amount of money, if any, to which such plaintiffs, or any of them, may be entitled as compensation or damages for injury to their property that will result from the construction of the new bridge and the approaches thereto.

It will thus be seen that the action in its present posture is a suit to compel the State of Colorado to commence and prosecute condemnation proceedings, or other appropriate proceedings, under its power of eminent domain, to determine the amount of compensation or damages to which such plaintiffs are entitled by reason of the construction of the new bridge and the approaches thereto.

While the citizenship of the plaintiffs in No. 4349 is not specifically alleged, it is fairly inferable from facts averred that they are citizens of Colorado.

Section 15 of Article II of the Colorado Constitution in part provides:

"Private property shall not be taken or damaged, for public or private use, without just compensation. Such compensation shall be ascertained by a board of commissioners, of not less than three freeholders, or by a jury, when required by the owner of the property, in such manner as may be prescribed by law, * * *."

Section 111, C. 143, Vol. IV–B, '35 C. S.A., provides that the State Highway Engineer, when he deems it desirable to establish, open, relocate, widen, or alter a portion of a state highway, shall make written report to the Highway Advisory Board, describing the portion of the highway to be established, opened, or changed and the portions of land of each landowner to be taken for the purpose, together with an estimate of the damages and benefits accruing to each landowner whose land may be affected thereby; that if such Board shall decide "that public interest or convenience will be subserved by the proposed change," it shall enter a resolution upon its minutes approving the same and authorizing the Engineer to tender to each landowner the amount of damages estimated by him and approved by such Board; that if any such landowner shall be of the opinion that the tender made is inadequate, he may, on or before 10 days from the date of such tender, file a written request, addressed to such Board, for a jury to ascertain the compensation to which he may be entitled by reason of damages sustained from altering, widening,

changing, or laying out such highway; and that thereupon such Board shall proceed in the acquisition of such premises, under C. 61, '35 C.S.A. Section 111, supra, further provides that the Board shall have the power, without tender or proceedings thereunder, to proceed in the acquisition of the land of private citizens for state highway purposes, under the Colorado statute providing for the exercise of eminent domain.

Section 1, C. 61, '35 C.S.A. provides:

"Private property shall not be taken or damaged for public or private use without just compensation; and in all cases in which compensation is not made by the state in its corporate capacity, such compensation shall be ascertained by a board of commissioners of not less than three freeholders or by a jury when required by the owner of the property, as hereinafter prescribed."

Sections 2 to 25, inclusive, of C. 61, supra, provide the procedure for actions in condemnation.

In 1952 the Legislature of Colorado enacted the "Department of Highways Act of 1952." L. '52, p. 144 et seq.[3] That act abolished the State Highway Advisory Board and created a State Highway Commission. Section 91(5), C. 143, as revised by that Act, defines the power and duties of the State Highway Commission. It does not provide that the State Highway Commission may be sued.

In State v. Colorado Postal Telegraph-Cable Co., 104 Colo. 436, 91 P.2d 481, the Telegraph Company brought an action against the State of Colorado to recover alleged damages resulting from it being compelled to move its telegraph line and poles to avoid injury thereto by the State in making certain public improvements at the State Hospital in Pueblo, Colorado. The court held that while Section 15 of Article II of the Constitution of Colorado is a prohibition against the taking or damaging of private property for public or private use without just compensation and imposes a liability on the State for an uncompensated injury or taking, it does not constitute a consent by the State to a suit against it to enforce such liability.

Mitchell v. Board of County Com'rs of Morgan County, 112 Colo. 582, 152 P.2d 601, 602, was an action brought by Mitchell against the State Highway Department of Colorado, and the Board of County Commissioners of Morgan County, to recover damages alleged to have been caused by the maintenance and operation of a certain highway and bridge in such a manner as to cause a creek to overflow on plaintiff's property. The Supreme Court of Colorado again held that Section 15 of Article II was not a consent by the State to be sued on its liability for compensation for property taken or injured for public use. It also held that the authority given by Section 111 of C. 143, supra, was not a consent by the State to be sued for such liability. The court said:

"Clearly the highway department is nothing more than an agency of the state and as to actions against it stands in the state's shoes. No permission has ever been granted to sue it."

State Highway Department v. Dawson, Colo., 253 P.2d 593, does not, in our opinion, overrule the doctrine of the Mitchell and Postal Telegraph Company cases. In the Dawson case the action was to recover from the State Highway Department the agreed price for gravel taken from the land of the plaintiff under an option to buy such gravel. The highway project had been approved and funds allotted and earmarked therefor, including the cost of the gravel. It was an action to compel the disbursement, in discharge of an accrued contract obligatory, of funds provided, allocated and earmarked for that purpose. Because of those facts, the court distinguished that case from the Mitchell case.

Likewise, we do not think Boxberger v. State Highway Department, Colo., 250 P.2d 1007, 1008, overrules the Mitchell

3. See Vol. IV-B, '35 C.S.A., 1952 Cum.Supp. p. 1 et seq.

and Postal Telegraph Company cases. There, the State Highway Department had obtained a deed, without payment of any consideration, to certain access right to and from a portion of Boxberger's farm which bordered on a state highway. The action was to cancel the deed on the ground of false and fraudulent representations made by the State Highway Department to Boxberger as an inducement for the making of the deed. It clearly was not a suit to enforce liability for compensation for property taken or damaged for public use.[4]

Accordingly, we conclude that the State of Colorado has not consented to be sued to enforce liability by way of compensation for property taken or damaged for public use by the State Department of Highways.

■ The power of eminent domain is an attribute of sovereignty, conditioned by the requirement that just compensation be paid for the taking.[5] The exercise of the right of eminent domain is the exercise of a sovereign power. To compel a state to bring a proceeding in eminent domain is to compel it to exercise one of its sovereign powers.

■ Whether a suit is one against a state is to be determined, not by the fact of the party named as defendant on the record, but by the result of the judgment or decree which may be entered.[6]

■ When a state officer acts in excess of his authority, or under an authority not validly conferred or contrary to law, his illegal act may be restrained in an action against him individually, by appropriate injunctive process and he may not claim the immunity of the state from suit. Likewise, where the state officer unlawfully takes and holds land without just compensation, an action can be maintained against the officer individually to recover the land.[7] But where the relief sought cannot be granted by preventive action against the state officer, but will require affirmative sovereign action by the state, the suit is one against the state.[8] Here, mandamus to compel the State to bring and prosecute proceedings in condemnation would require affirmative action by the State in the exercise of its sovereign power of eminent domain.

It has been held by the courts of last resort of five states that where a state agency has taken or injured private property for public use without paying compensation therefor, or without instituting condemnation proceedings to deter-

4. In the Boxberger case the court said:
   "This is not an action in tort, nor is it one to impose liability upon the state, nor for the recovery of money that would finally come from the funds of the state treasury, neither would any political or governmental power of the executive branch of the state government be invaded through the relief sought."

5. Albert Hanson Lumber Company v. United States, 261 U.S. 581, 587, 43 S.Ct. 442, 67 L.Ed. 809; City of Norton v. Lowden, 10 Cir., 84 F.2d 663, 665; United States v. Federal Land Bank of St. Paul, 8 Cir., 127 F.2d 505, 508; 29 C.J.S. Eminent Domain, § 2, page 777.

6. Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 687, 69 S.Ct. 1457, 93 L.Ed. 1628; State of Minnesota v. Hitchcock, 185 U.S. 373, 387, 22 S.Ct. 650, 46 L.Ed. 954.

7. United States v. Lee, 106 U.S. 196, 204, 1 S.Ct. 240, 27 L.Ed. 171; Larson v. Domestic & Foreign Commerce Corp., supra, 337 U.S. 697, 69 S.Ct. 1465.

8. State of North Carolina v. Temple, 134 U.S. 22, 10 S.Ct. 509, 33 L.Ed. 849; Larson v. Domestic & Foreign Commerce Corp., supra, 337 U.S. 691, note 11, 69 S.Ct. 1462.
   In Pennoyer v. McConnaughy, 140 U.S. 1, 16, 11 S.Ct. 699, 704, 35 L.Ed. 363, the court quoted with approval from Hagood v. Southern, 117 U.S. 52, 70, 6 S.Ct. 608, 29 L.Ed. 805 as follows:
   "A broad line of demarcation separates from such cases as the present, in which the decrees require, by affirmative official action on the part of the defendants, the performance of an obligation which belongs to the state in its political capacity, those in which actions at law or suits in equity are maintained against defendants who, while claiming to act as officers of the state, violate and invade the personal and property rights of the plaintiffs, under color of authority, unconstitutional and void."

mine the amount of compensation due, if any, the owner may compel the state agency authorized so to do, to bring condemnation proceedings to determine the amount of compensation, if any, due, or to include in pending condemnation proceedings property taken and omitted from such proceedings.[9] In certain of the jurisdictions so holding, the state agency, by statute, is given the right to enter upon and take the lands in advance of the commencement of condemnation proceedings, but is required thereafter to institute condemnation proceedings to fix the compensation to the landowner. The right to mandamus in such jurisdictions is sustained on the theory that the bringing of the condemnation proceedings is a purely ministerial and nondiscretionary duty. In other jurisdictions the decisions sustaining the right to mandamus are an effort to reconcile the constitutional requirement that private property shall not be taken for public use without the payment of just compensation with the doctrine of sovereign immunity of the state from being sued without its consent. They hold that a plea of nonsuability of the state to an action in mandamus to compel the bringing of a condemnation proceeding to determine the compensation for property taken for public use by a state agency, is contrary to the spirit and letter of the constitutional requirement that just compensation shall be paid for the taking.

Sections 2 and 6, C. 61, '35 C. S.A. have been construed to authorize the court during the pendency of condemnation proceedings and before legal ascertainment of the compensation due, to enter an order permitting the petitioner to enter upon the land upon payment to the clerk of the court of an amount sufficient to compensate for the property taken or injured. But the statutes of Colorado do not authorize the taking of private property for public use by a state agency in advance of the commencement of condemnation proceedings. It follows that when a state agency enters upon land or injures land within the meaning of Section 15, Article II of the Colorado Constitution, without paying just compensation therefor, or without having commenced condemnation proceedings to ascertain the compensation due for the taking or injury, the act of the state agency is unauthorized and unlawful and is not the act of the State of Colorado. As stated above, neither Section 15 of Article II of the Colorado Constitution nor Section 111 of C. 143, supra, constitutes a consent by the State to be sued for the liability imposed by the constitutional provision for the taking or injury of private property for public use.

Accordingly, we conclude that the Supreme Court of Colorado would not hold that mandamus will lie to compel the bringing of condemnation proceedings by a state agency for the unauthorized act of the state agency in taking or injuring property without the payment of compensation therefor and without first bringing condemnation proceedings to determine the amount of compensation due. To do so, in our opinion, would be to require the State to take affirmative action in the exercise of its sovereign power of eminent domain.

What we have said is not to be construed as holding that there is no remedy in Colorado for an unauthorized and unlawful taking or injury of private land for public use without compensation, by a state agency. We are of the opinion that the remedy is against the state officer, individually, to prevent his unlawful act or for appropriate redress if it has been consummated. And if the District Court shall conclude, after a

9. Haycock v. Jannarone, 99 N.J.L. 183, 122 A. 805; Goodavage v. State Highway Commission, 96 N.J.Eq. 424, 125 A. 919; State, by Benson v. Stanley, 188 Minn. 390, 247 N.W. 509; State ex rel. Peterson v. Bentley, 216 Minn. 146, 12 N.W.2d 347; State by Peterson v. Anderson, 220 Minn. 139, 19 N.W.2d 70; Riggs v. State Road Com'r, 120 W.Va. 298, 197 S.E. 813; Hardy v. Simpson, 118 W.Va. 440, 190 S.E. 680, 191 S.E. 47; State Road Department of Florida v. Tharp, 146 Fla. 745, 1 So.2d 868; People ex rel. First Nat. Bank v. Kingery, 369 Ill. 289, 16 N.E.2d 761.

determination of the relevant facts, that the action of the State Engineer and the State Department of Highways constitutes a deprivation of property without due process of law, in violation of the 14th Amendment to the Constitution of the United States, thus giving it jurisdiction of the suit, we do not hold that the District Court may not enjoin the further construction of the bridge and its approaches, or so much of such construction as may be necessary to protect the property rights of the plaintiffs, unless or until the State shall bring appropriate proceedings to fix and determine the compensation, if any, that shall be paid to the plaintiffs for the taking of or injury to their respective properties.

The denial of the preliminary injunction was not an adjudication of the ultimate rights in controversy. It will not be conclusive on the court or the rights of the plaintiffs at a subsequent hearing.[10]

We conclude that the State is entitled to the writ. We shall assume, however, that the District Court will refrain from commanding the State to institute condemnation proceedings or other appropriate action to determine the amount of compensation, if any, to which the plaintiffs or any of them may be entitled for the taking of or injury to their property, without formal issuance and service of the writ. The writ will not issue unless this court shall hereafter so order.

MURRAH, Circuit Judge (dissenting).

I readily agree that the State Highway Department and Commission are agencies of the State of Colorado, and as such are clothed with sovereign immunity of the state from unconsented suit. I also readily agree that a suit against the state is not entertainable in the federal court upon the suggestion or mere allegation that it arises under the federal constitution. It is also agreed that the judgment or relief sought, not the parties named in the suit, controls the question of suability. If this is a suit against the state to coerce or compel its officers or agents to perform or exercise a political or governmental function such as the imposition of liability for a money judgment to be paid from general funds, the levying of a tax, or the appropriation of money by the legislature, it is an unconsented suit, and the court was clearly without jurisdiction and the writ of prohibition should issue, even though the redress is sought under the prohibition of the federal constitution.

A rightful regard for the independence of the coordinate branches of our government has prompted the courts to assiduously refrain from judicially interfering with the exercise of legislative or executive functions of the government. It is only when agents of the state act under color of authority to deprive a citizen of his liberty or property without due process of law that the courts intervene to stay the executive hand and grant appropriate redress. This notable and historical exception to the rule of immunity has been recognized and emphasized very recently in Larson v. Domestic & Foreign Corp., 337 U.S. 682, 69 S.Ct. 1457, 1474, 93 L.Ed. 1628, and Georgia R. & Banking Co. v. Redwine, 342 U.S. 299, 72 S. Ct. 321, 96 L.Ed. 335. Mr. Justice Frankfurter boiled it down to this: "The federal courts are not barred from adjudicating a claim against a governmental agent who invokes statutory authority for his action if the constitutional power to give him such a claim of immunity is itself challenged." See his dissent in Larson v. Domestic & Foreign Corp., supra.

The exception is based upon the immutable principle that even the sovereign is amenable to the law and must act within it and that an agent of the sovereign cannot act under color of law to invade the rights and properties of a citizen and claim immunity for it as an act of the state. See Home Telephone and Telegraph Company v. City of Los Angeles 227 U.S. 278, 33 S.Ct. 312, 57 L.Ed. 510; Cuyahoga-River Power Company v. City

10.  Hunter v. Atchison, T. & S. F. Ry. Co., 7 Cir., 188 F.2d 294, 298.

of Akron, 240 U.S. 462, 36 S.Ct. 402, 60 L.Ed. 743; Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714.

Indeed, the majority concede that the taking or injuring of private property without the payment of compensation is unauthorized under the constitution of the State of Colorado and cannot be said to be the act of the state. But it seems to say that since the state has not consented to be sued for liability imposed for such unconstitutional injury, the citizen is without remedy to compel the agent of the state to bring appropriate proceedings to determine whether there has been an injury, and if so, just compensation therefor. This conclusion is based on the concept that to require the state to exercise its sovereign power of eminent domain would be an undue and unauthorized interference with the executive function of the government.

In reaching this conclusion the majority does not wish to be understood as leaving the citizen whose property has been damaged remedyless. Instead it leaves the district court free to restrain the unconstitutional injury until just compensation has been appropriately determined and paid. The basis for granting the writ then is that although the federal court may appropriately restrain the unconstitutional invasion of the citizen's property rights, it cannot compel the state to provide due process for the injury once committed. I agree that the trial court had jurisdiction to restrain the unconstitutional invasion, but I would also sustain the trial court's affirmative decree.

In my judgment the procedural distinction between a negative and affirmative decree does not in these circumstances mark the difference between sovereign immunity from the exercise of governmental functions and suability for unconstitutional invasion of private rights.

Apparently to avoid federal jurisdiction the attorney general insists that mandamus lies in the state courts to compel the institution of condemnation proceedings to determine the injury and just compensation. In support of that proposition he relies upon the decisions from six states, all of which deny sovereign immunity from suits to compel the state agency to institute proceedings for the determination of injury to property and the amount of compensation therefor. See cases cited Note 8 of the majority opinion. Mandamus is sustained on the theory that the duty to afford the citizen whose property is taken or injured due process of law is ministerial and nondiscretionary and indeed mandatory.

While the courts of Colorado have not directly spoken on the question they have sustained mandamus against the city council, mayor and auditor to compel the payment by the city of a condemnation award previously entered in favor of the respondent landowner. See Heimbecher v. City and County of Denver, 97 Colo. 465, 50 P.2d 785. And they have also made it plain that, "neither the executive nor the legislative branches of our government has any right whatsoever to deprive anyone of his life, liberty or property without due process or compensation", and "that the judicial branch of the government stand[s] open as a haven for the protection of any citizen whose rights have been invaded, whether it be by an individual or by either of the other branches of our government." Boxberger v. State Highway Department, Colo., 250 P.2d 1007, 1008. Moreover, in the absence of authoritative decisions of the Colorado courts, the attorney general of the state is the interpreter of the Colorado law, and his opinion that mandamus will lie in the state courts should have binding force here, especially when he invokes on behalf of the state the respectable and well reasoned authorities of other states.

To be sure, state court jurisdiction in mandamus is inconsistent with sovereign immunity from suit. It is a concession of suability for redress of an unconstitutional act of a state agency and a denial of due process of law. But the attorney general argues that availability of the remedy of mandamus in the state courts deprives the federal court of ju-

risdiction to grant the same remedy. The conclusive answer to that is that the reach of the Fourteenth Amendment is coextensive with any exercise by a state of power in whatever form asserted. Home Telephone and Telegraph Company v. City of Los Angeles, supra. And the federal jurisdiction extends to the deprivation of rights secured to the citizen by the Fourteenth Amendment against state infringement. If the state court has jurisdiction to compel the sovereign agent to accord the citizen due process of law for property taken or injured, certainly the federal courts have concurrent jurisdiction of the same subject matter in a suit in federal court as one arising under the constitution and laws of the United States.

Here the plaintiffs have alleged an injury to private property by the officers of the state acting under color of authority without payment of just compensation. By such allegations they have invoked the rights secured to them under the federal constitution against state action. All of the jurisdictional requirements have been met. The court has prudently declined to enjoin state action, for in any event the state is empowered to take or injure the property subject only to the duty to pay just compensation therefor. Instead the court has, in the exercise of a sound discretion, elected to order the state engineer to show cause why he should not institute proceedings to afford due process of law by the payment of just compensation. The only triable issue on the order to show cause is whether as a matter of federal law there has been a taking of private property by the state agent without due process. If the court determines that there has been no constitutional taking, the litigation is at an end. If, on the other hand, it does determine that the acts complained of amount to an unconstitutional injury to private property, it may require the state agency to exercise its nondiscretionary duty to accord the injured citizen due process of law, or convinced of a state remedy it may conceivably leave the parties to recourse in the state courts. But all of this involves an exercise of jurisdiction. It is not a denial of it. And in any event, the extraordinary writ of prohibition should not issue if the jurisdiction to grant relief is doubtful. Pennsylvania Turnpike Commission v. Welsh, 3 Cir., 1951, 188 F.2d 447.

I would deny the writ.